# APPELLATE COURT

#### OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, MAY TERM, 1895, IN THE SEVENTY-NINTH
YEAR OF THE STATE.

---

No. 1,597.

### TERRY v. PROVIDENT FUND SOCIETY OF NEW YORK.

INSURANCE.—*Accident.*—*Application Taken by Unauthorized Agent.*
—*Acceptance.*—*Ratification.*—Where an unauthorized person solic-
ited an application for insurance, and the insurance company rec-
ognized the regularity of the application and the legitimacy of the
channel through which it came, it thereby placed such person upon
the same foundation with other agents of the company for solicit-
ing and contracting for insurance, and he had as much authority
in that behalf as a regularly commissioned agent would have had.
SAME.—*Payment of Premium to Soliciting Agent.*—*Waiver.*—*Es-*
*toppel.*—A payment of the first advance premium (less the soliciting
agent's commission) to such agent, was a payment to the company,
and the company is estopped to deny the payment of the premium
to the home office, such agent having waived the same by accept-
ing the premium in cash, less his commission.

From Lawrence Circuit Court.

*T. J. Brooks* and *W. F. Brooks,* for appellant.

*J. D. Alexander,* for appellee.

REINHARD, C. J.—This is a suit on an accident insurance policy. The cause was tried by the court. Special findings were made by the court, with its conclusions of law thereon. The appellant excepted to the conclusions of law, and unsuccessfully moved for judgment on the findings. The court rendered judgment for appellee. The appellant's assignments of error are:

"1. The court erred in its conclusions of law on the special finding of facts.

"2. The court erred in overruling appellant's motion for judgment on the special finding of facts."

These alleged errors may be considered together.

The policy contains the following provision: "'This insurance shall not take effect until the first advance-quarterly-premium-call shall be paid at the home office in New York, for which a receipt shall be given over the name of the president showing the date and hour of payment." Also the following: "No waiver shall be claimed by reason of the acts of any person, unless such acts shall be specially authorized in writing over the signature of the president of the society."

It is not claimed that the first quarterly premium (which amounted to $5.00) was paid at the home office in New York. The appellee's contention is that the sum was never paid to the company or any authorized agent of the same. The appellant contends that he paid one-half the premium to the agent who procured the insurance to be written, and that as to the other half, which was said agent's commission, the agent gave the appellant credit for the same.

The facts found specially show that about December 10, 1893, one R. H. Carpenter, who lived near Huron, in Lawrence county, solicited the appellant to take a policy of accident insurance in the appellee company. Carpenter, who had previously solicited appellant in

that behalf, had in his possession one of said company's blank applications, which he filled out and got appellant to sign. He forwarded the application to one E. F. Sutherland, at Mitchell, Indiana, and he to Dorman N. Davidson, the appellee's general agent for the State of Indiana, at Indianapolis, who, in turn, forwarded the same to the appellee's home office in New York City, where it was duly received and marked "accepted," and a policy issued thereon, on the 18th day of December, 1893. At the same time a receipt for the first premium call of $5.00 was signed by the president of the company, which, together with the policy, was transmitted by mail to said Davidson, with instructions to deliver the policy and receipt to the applicant on the receipt of the $5.00. Sutherland was not a commissioned agent of the company, but had some of its blank applications, and used them for persons desiring insurance in appellee company. When filled out and signed he sent such applications to Davidson, who forwarded them to the home office. Carpenter was unknown to the company or the State agent. When it was ascertained that Carpenter had taken the application, the words "R. H. Carpenter" were written on the margin thereof, but only as a memorandum to designate the person who had taken the application. At the time Sutherland sent the application to Davidson he requested the latter to send him (Sutherland) the policy and hold the receipt for the money until he (Sutherland) had sent the same to Davidson. In accordance with this request Davidson sent the policy to Sutherland, who handed or sent the same to Carpenter. About January 1, 1894, Carpenter delivered the policy to the appellant, who paid Carpenter $2.50 in cash, and the latter gave appellant credit for $2.50 additional, saying that it was his commission for securing the policy, which was true. Carpenter,

at the same time, also delivered to the appellant a blank of said company for making proof of loss in case of accident. On the 8th day of January, 1894, appellant was injured, and in consequence thereof was disabled for a period of sixteen weeks, for which, if properly insured, he would have been entitled to receive indemnity from the company at the rate of $10 per week. Carpenter resided six miles from Huron, where the appellant lived, and the latter had known Carpenter for fifteen years. Appellant, when he made the application, was able to read, and on the night of the day upon which he received the policy he read all its conditions and provisions, including the ones hereinbefore alluded to and the further one that "the provisions and conditions aforesaid, and a strict compliance therewith during the continuance of this contract, are conditions precedent to the issuance of this certificate and to its validity and enforcement, and no waiver shall be claimed," etc., as heretofore stated. The court further finds that "the said plaintiff trusted entirely to Carpenter;" that Davidson held said receipt at Indianapolis, waiting for the money to pay the said first premium, until about December 31, 1893, and not having received the same returned the receipt to the home office with advice that the said premium had not been paid, when, on January 3, 1894, the policy was canceled by the company, and the word "canceled" stamped on said application. The company or its agents never notified appellant of the cancellation of the policy until after notice of said injury. On January 16, 1894, the State agent, Davidson, was informed by Sutherland that Carpenter had paid him $2.50 on and for the appellant's advance premium, and asked instructions as to what should be done with the money, and was informed by Davidson that the policy had been forfeited for nonpayment of the advance

premium January 3, 1894, and instructed him to return the money to appellant or Carpenter, and it was so tendered by Sutherland, but refused, and Sutherland still holds the money subject to the orders of the appellant or Carpenter. On the 8th day of January, 1894, appellant made proof of his injury on the blank given him by Carpenter, and appellant forwarded said proof to the home office of the appellee, where it was duly received on January 12, 1894, and the company notified appellant denying any liability and informing him of the cancellation of the policy. Appellant, after reading the policy, never went to see Carpenter to learn why he had not given him a receipt for the money paid him, signed by the president of the company, showing the amount, date and hour of payment, nor did he ever demand such a receipt nor inquire whether Carpenter had the same, or had any written authority from the company to transact its business. If there was any limitation on Carpenter's authority to act as agent, appellant had no knowledge of the same except as the same was disclosed by the policy. When it received notice of the signing, the company denied all liability under the policy, and for said injury, and has denied all liability ever since. The policy had among other indorsements upon it the following:

"$5.00. DECEMBER 18, 1893.

"Received of E. A. Terry five dollars of first advance quarterly annual premium call on policy No. 6,082, this December 18, 1893. A. N. LOCKWOOD, President.

"This receipt is void unless dated on the day of actual payment and at that time countersigned by D. N. Davidson."

The following indorsement was written across the face of the policy: "Payment having been made after the

date of expiration of assessment, no indemnity will be allowed for injuries received between the date of expiration and time of payment."

Also the following indorsement across the face in blue pencil: "Canceled.   D. N. Davidson, 12–18–93.— 1–3–94."

The application is stamped across its face "canceled," and beneath this word is written in red ink: "January 3, 1894.   Nonpayment advanced premium call."

Also the following in red ink: "Accident Department. Application accepted at 5 P. M. this 18th day of Dec., 1893.—Sec'y."

We think under the facts found it must be held that Carpenter had authority to deliver the policy upon condition of the prepayment of the advance premium according to the terms of the policy.   This is true, as we conceive, from the fact that the execution of the policy is not denied under oath, and that the risk was accepted by the company upon the appellant's application.   The failure to deny the execution of the policy and the acceptance of the application amount to a ratification of the acts of the agent in soliciting the insurance, the receiving of the application and the conditional delivery of the policy. *Home Ins. Co.* v. *Gilman, Exr.,* 112 Ind. 7 ; *Kerlin* v. *National Accident Assn.,* 8 Ind. App. 628.   The only reason urged for the cancellation of the policy was the failure of the applicant to send the advance premium to the home office, for it cannot be denied, we think, that if the appellant had sent the money to the home office or paid it to Davidson or the company's recognized agent, Sutherland, the delivery of the policy through Carpenter could not be successfully disputed.   The company could, of course, have repudiated the acts of Carpenter entirely, and refused to recognize his authority as its agent to contract

for the insurance.    But it cannot be heard to ratify the acts of Carpenter in part and repudiate them in part. When it recognized the regularity of the application and the legitimacy of the channel through which it came, it placed Carpenter upon the same foundation with other agents of the company for soliciting and contracting for insurance.    He had just as much authority in that behalf as a regularly commissioned agent would have had. Had such commissioned agent been sent by the appellee to the appellant to solicit this insurance, without instructions except to comply with the terms of the application and policy, there would be just as much reason for disputing his authority to deliver the policy, except upon payment of the premium, as there was here on the part of Carpenter.    But the authorities above cited firmly establish the rule, we think, that where the applicant is ignorant of any limitation upon the agent's authority, as it is found was the case here, and the applicant acts in good faith and relies upon the acts and statements of the agent, within the scope of his apparent authority, the principal will be bound by the agent's statements and acts, and this, we think, includes a waiver of the condition that the advance premium must be paid at the home office and a receipt procured for the same.

In the case of *Kerlin* v. *National Accident Assn.*, *supra*, it was said by Davis, J., speaking for this court:

"So, if, at the time the application is made or the insurance is contracted, circumstances or conditions exist which are in conflict with the terms and conditions of the application or policy, and the agent of the company knew of their existence, 'and agreed that as to them the conditions' of the application should not be effective, the insurer cannot take advantage of their existence to defeat a recovery after loss has occurred."

In the present case, of course, the company is not subject to the criticism of having waited till the injury had occurred before asserting its defense. It canceled the policy before such injury because it had not received the premium. But if the premium was paid to its agent, as we must hold that it was, it is in effect the same as if it had been paid at the home office, and the fact that the money was not accounted for by the agent before the injury cannot be made a cause for forfeiting the policy. It seems to us that the question before us is narrowed to the inquiry whether the insured shall be made to suffer for the misconduct of the company's agent. Under the circumstances, we think the appellee is estopped to deny the payment of the premium to the home office, the agent, Carpenter, having waived the same, and accepted it in cash less his commission, which he had a right to remit. To quote again from the case of *Kerlin* v. *National Accident Assn, supra:* "In our opinion, * * * * the agent of the company had the right, on the occasion in question, to do all that could have been done, in relation to such matters, by the officers of the company at the home office."

Indeed, the conduct of the secretary or other officers at the home office was such as to lead to the conclusion that it was not the intention that the money should be paid at the home office. The receipt for the advance premium was sent with the policy to the general agent at Indianapolis. But whether such was the intention or not is immaterial, if the requirement to pay at the home office was waived.

As said by Mitchell, J., in *Home Ins. Co.* v. *Gilman, supra:* "It is well settled that payment of the premium in cash may be waived by an agent authorized to deliver policies and receive payment, notwithstanding a stipulation in the policy to the contrary; and unless a policy

so delivered is avoided by showing bad faith or collusion, it is enforcible. * * *  If the company has been credited with the premium in account by its agent, or if credit has been extended by the agent to the assured, or if it has, in fact, been paid to him, no doubt it is a sufficient payment to the company to support the policy."

In May on Insurance, section 360, it is said : "If the agent be authorized to receive the premium, on agreement between the assured and the agent that the latter will be responsible to the company for the amount, and hold the assured as his personal debtor therefor, it is a waiver of the stipulation in the policy that it shall not be binding until the premium is received by the company or its accredited agent."  See, also, *Behler, Admx.,* v. *German, etc., Ins. Co.,* 68 Ind. 347 ; 11 Am. and Eng. Encyc. of Law, 308, 336 ; *Kentucky Mut. Ins. Co.* v. *Jenks,* 5 Ind. 96.

Moreover, in the case in hand the appellee must have known that the application was taken by Carpenter, as the words "Credit R. H. Carpenter" were written on the back of the application after it had passed from appellant's possession and without his knowledge.  Whatever knowledge this implied was possessed by the appellee when it received the application and indorsed it as "accepted."  Even if Carpenter was but a broker, he was still authorized to deliver the policy and receive the premium.  *Indiana Ins. Co.* v. *Hartwell,* 123 Ind. 177 ; *Criswell* v. *Riley,* 5 Ind. App. 496.

There is no contention that $2.50 was not the correct amount coming to the appellee after deducting the commission.  In fact, as already intimated, the only complaint appears to be that Carpenter did not promptly turn over the money to the company.  If, however, he was its agent for the purpose of delivering the policy and collecting the premium, as we think we have dem-

onstrated he was, then ,the appellee is bound by the payment made to him, and the policy was in force when the appellant was injured. We think, therefore, the court erred in its conclusions of law and in not rendering judgment in favor of the appellant.

Judgment reversed, with instructions to the trial court to re-state its conclusions of law in accordance with this opinion, and to render judgment thereon in favor of appellant for $160 and interest from the 9th day of February, 1894.

