[S. F. No. 283.   Department Two.—September 2, 1896.]

CHARLES JURGENS, APPELLANT, v. NEW YORK LIFE INSURANCE COMPANY, RESPONDENT.

|114  161|
|d126 503|
|114  161|
|d128 544|
|129   85|
|114  161|
|124  273|

LIFE INSURANCE—POLICY IN NAME OF WIFE — RESCISSION FOR FRAUD — CONSENT OF WIFE ESSENTIAL — ACTION OF HUSBAND TO RECOVER BACK PREMIUM—NONSUIT.—Where a husband has taken a policy of life insurance in the name of his wife, the obligations imposed by the contract of insurance are to both of them, and both must join in demanding a rescission of the policy for alleged fraud on the part of the agent of the insurance company in inducing the payment of the premiums, and the husband alone cannot, without her consent, effect a rescission by redelivering the policy to the agent who effected the in-

surance, and the husband is properly nonsuited in an action by him alone to recover back the premium, upon a rescission attempted by him alone, without a release by the wife of the obligation of the insurance company to her.

Id.—Note Given for Premium—Payment—Delivery of Policy—Waiver of Terms.—A promissory note given by the insured to the agent for the premium, which is discounted by the agent, for the purpose of raising the money, is, in effect, a payment of the premium to the agent, who is responsible to the company for the cash payment, and the policy takes effect upon its unconditional delivery whether the premium is then actually paid to the company or not, and such delivery waives a provision that the policy shall not be in force until the premium is paid.

Appeal from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial.   A. A. Sanderson, Judge.

The facts are stated in the opinion of the court.

*Van Ness & Redman*, for Appellant.

*E. J. McCutchen*, for Respondent.

Temple, J.—The appeal is from a judgment of non-suit and from an order denying a new trial.   The action was brought to recover fourteen hundred and sixty two dollars, paid as the first annual premium upon a policy of life insurance for twenty-five thousand dollars, plaintiff claiming that the contract of insurance had been rescinded by him.   He claims to have rescinded because he was induced to receive the policy, and pay the first premium, by the false and fraudulent representations of defendant's agent, one Eaton.   The policy issued to him was precisely such a policy as he had applied for in writing, but the written application was made out by Eaton, and Eaton had assured him, and induced him to believe, that the policy would be an endowment policy for twenty-five thousand dollars, which would be paid him at the end of ten years, or, in case of his death, within that period to his wife Katherine, whereas the policy delivered to him only entitled him to an endowment of three-tenths of the sum of twenty-five thousand dollars, or seven thousand five

hundred dollars. There was a similar misrepresentation in regard to the surrender value of the policy.

In the written application of plaintiff he stated: "Inasmuch as only the officers of the home office of said company in the city of New York have authority to determine whether or not a policy shall issue on any application, and as they act on the written statements and representations referred to, no statements, representations, or information, made or given by or to the person soliciting or taking this application for a policy, or by or to any other person, shall be binding on said company, or in any manner affect its rights, unless such statements, representations, or information be reduced to writing and presented to the officers of said company, at the home office, in this application."

There was also a stipulation that the policy to be issued should not be in force until the premium was actually paid to the agent of the company and accepted during the life and good health of the insured.

The application was referred to and made part of the policy.

The application was made September 8, 1893. Eaton was a mere solicitor for the company, Mr. Hawes being the agent of defendant for California. To pay the premium plaintiff executed a promissory note payable to his own order, indorsed in blank, and delivered it to Eaton. Eaton sold the note to the Central Bank of Oakland and paid the money, less his commission to defendant's agent, who, on the sixth day of October, sent the policy to plaintiff by Eaton.

According to plaintiff's testimony Eaton read or pretended to read a portion of the policy to him, and he then signed a statement which contained the following: "I find the policy is exactly as represented and I can recommend your company as being first class in every respect, and can recommend you and your company to my friends."

The policy itself contained a provision that "No agent has power in behalf of the company to make or

modify this or any contract of insurance, to extend the time for paying a premium," etc.

The policy was delivered on Friday. On the following Wednesday plaintiff complained to Eaton that it did not accord with his oral representations, and, at the suggestion of Eaton, called upon Hawes, defendant's agent. There he threw down the policy and demanded the return of his note on the ground that he had been defrauded, stating his grievance. He was informed then. or subsequently that defendant did not have and had never had his note, and knew nothing of the representations made by Eaton. It does not appear that prior to this time any agent of defendant, other than Eaton, was aware that a note had been given. The contract itself provides that no agent is authorized to give credit, but I see no reason why Eaton might not, as agent for plaintiff, discount his note for him and thus raise the money. If a discount was charged by the bank it was probably deducted from Eaton's commissions. This was a private affair between Eaton and plaintiff. Plaintiff had stipulated in writing that no oral representations of Eaton should be regarded, and that the issuance of the policy or the refusal of the risk were based solely upon the written application and the report of the medical examiner.

Defendant contends that a rescission was not effected because upon the delivery of the policy Mrs. Jurgens acquired a vested right, and no release from her was tendered. The general proposition involved in this contention is not disputed by appellant, but he contends that it has no application to this case. He contends that the doctrine has no application to cases in which a rescission may be compelled, and does not require the consent of the insurer. I can discover no reason for such a distinction, and no authority is cited in its support.

If plaintiff was entitled to rescind in consequence of the fraud of defendant, nevertheless it was incumbent upon him to restore to defendant everything of value

which he had received, and to place defendant substan-
tially in the position formerly occupied by it.   An offer
to rescind is an offer to release the opposite party from
the obligations of the contract.   If the obligations are
not to plaintiff he cannot make that offer.   In this case
plaintiff could not do so without the consent of Mrs.
Jurgens.   Plaintiff says, if the facts justified plaintiff in
demanding a rescission such facts would constitute a
defense for the company against Mrs. Jurgens.   This is
not true.   They could not be heard to plead their own
wrong in defense.   Only actual rescission could be re-
lied upon as a defense, and the argument assumes the
point at issue, that a legal rescission has been made.
The obligations imposed by the contract upon the de-
fendant were to the plaintiff and his wife, and both
should join in demanding a rescission.   (*Trabandt* v.
*Connecticut etc. Ins. Co.*, 131 Mass. 167; *North American
Life Ins. Co.* v. *Wilson*, 111 Mass. 542.)

Plaintiff also contends that, if the consent of Mrs.
Jurgens is necessary to a rescission, then defendant by
its fraud got itself into the trouble and cannot object to a
rescission because plaintiff is unable to place it in *statu
quo*.   That is to say he can recover from defendant
the premium paid, although he gets for it and retains the
entire benefit of the payment.   For, of course, in the
event of his death within the year, Mrs. Jurgens would
collect twenty-five thousand dollars, the full amount of
the policy.   This would not be rescission.   The contract
did not oblige plaintiff to continue paying after the
year, and, if he did not, the premium paid was only in
consideration of the risk carried during the year.   On
the supposition made, defendant would carry that risk.

It is also contended by plaintiff that by the very
terms of the contract the policy never was in force;
therefore, Mrs. Jurgens had no interest in it.

A somewhat similar state of things existed in *Griffith*
v. *New York Life Ins. Co.*, 101 Cal. 627; 40 Am. St.
Rep. 96.   The policy was issued by the same company,

and contained the same condition to the effect that the policy shall not be in force until the payment of the premium during the life of the insured. There the agents, though forbidden to give credit, took the notes of the insured as here. The court said: " It was in effect, so far as defendant was concerned, a payment of the premium to the agents, who held the note in lieu of so much money with which they were chargeable. It was, as to defendant, a payment of the premium to the agents, and not an extension of the time of payment." So here, it does not appear that any agent of the defendant—other than the solicitor, whose agency was of a very limited character—ever knew of the note. The money was not received by Mr. Hawes for two days after plaintiff demanded its return, but for all that appears he may have believed that the money was in the hands of Eaton. And whether it was or not, since Eaton had no authority to take the note, he was answerable to the company for so much cash.

This question is also covered by the case of *Griffith* v. *New York Life Ins. Co., supra.* It was there held that an express provision in the policy that the company shall not be liable until the premium is paid is waived by the unconditional delivery of the policy.

It may be that had Mrs. Jurgens refused to join in a rescission, plaintiff might still on some terms have procured a release from his contract, but if he could, Mrs. Jurgens should have been a party to any action for that purpose. Appellant's counsel says that plaintiff cannot be compelled to bring a suit in such a manner that a judgment in his favor shall afford protection to the defendant. I understand that he is bound to do that very thing, though, if this were the only objection in this case, it might not now be available to the defendant.

The judgment and order are affirmed.

McFARLAND, J., and HENSHAW, J., concurred.

Hearing in Bank denied.

BEATTY, C. J., dissented from the order denying a hearing in Bank, and on the 3d of October, 1896, filed the following opinion:

BEATTY, C. J.—I dissent from some of the conclusions of the court in this case, and therefore, from the order denying a rehearing before the court in Bank.

It will be observed that the decision does not go upon the ground that the plaintiff was not in fact defrauded. On the contrary, it assumes that he was defrauded, but holds that he could not rescind by his own act without tendering a release by his wife of her interest in the policy. I think this is probably a sound construction of the statute. (Civ. Code, sec. 1689.) But if plaintiff could not effect a rescission by his own act without putting the defendant in *statu quo*, it does not follow that he could not compel a rescission by an action instituted for that purpose. The present action, it is true, is not in form an action to rescind, and that is not the relief prayed. The complaint proceeds upon the theory that a rescission was effected by the act of the plaintiff, and merely prays judgment for the amount of premium paid. But, assuming, as the opinion does, that the plaintiff was really defrauded, his complaint states facts sufficient to warrant a judgment of rescission—facts, in other words, sufficient to constitute a cause of action—though not sufficient to warrant the specific relief sought by the prayer. In this respect, however, the complaint was amendable, and the omission to make Mrs. Jurgens a party was waived by the failure to demur.

As to the rights of Mrs. Jurgens, it made no difference whether she could or could not be compelled to release her interest in the policy. If she could be compelled in an action to rescind to release her interest, she was a necessary party to such action only for the protection of the defendant, and the defendant could, by failing to demur to the complaint for nonjoinder, waive the advantage of a decree binding upon her. If

she could not be compelled to release her interest, that would not have been a reason for denying a rescission. It is only in cases of *mere mistake* that rescission cannot be adjudged without putting the party against whom it is adjudged in *statu quo*. (Civ. Code, sec. 3407.) A party who has secured an advantage over another by fraud cannot avoid rescission upon the ground that he has involved himself in obligations to third parties. (*Masson* v. *Bovet*, 1 Denio, 69; 43 Am. Dec. 651; *Hammond* v. *Pennock*, 61 N. Y. 145.)