## PRUDENTIAL INSURANCE COMPANY *v.* SULLIVAN.

[No. 3,341. Filed March 5, 1901. Rehearing denied May 28, 1901.]

INSURANCE.—*Complaint on Policy.—Theory of Complaint.—Waiver of Condition.*—Where a complaint on an insurance policy proceeded on the theory of a breach on the part of defendant, and the performance of all conditions devolving upon the plaintiff, except the condition providing for payment of premiums in advance, the performance of such condition was waived by parol agreement by defendant to extend the time of payment, and such agreement does not amount to an attempt to establish a modification or contradiction of the written agreement of insurance, but rather to the formation of an entire contract in writing, and an excuse on the part of plaintiff for failure to perform one of its conditions. *pp. 31-40.*

SAME.—*Waiver of Condition.—Premium Payable in Advance.*—An insurance company may, by parol, waive the condition of a policy requiring the payment of the premium in advance, give credit to the insured for a specified time, and stipulate that the written policy issued on an accepted application shall remain in the custody of the company until the premium is paid, but that the policy shall be in force and effect from its date, since the condition that the pre-

Prudential Ins. Co. *v.* Sullivan.

mium shall be paid in advance is for the benefit of the company and may be waived by it.  *pp. 31-40.*

APPEAL AND ERROR.—*Original Bill of Exceptions.—Cannot Bring Up Instructions.*—Where a bill of exceptions is certified by the clerk to be the original bill of exceptions containing the instructions given and those refused and also the evidence and rulings thereon, the bill, if properly in the record, cannot bring up more than the evidence and the rulings thereon, since the original bill of exceptions cannot present instructions given or refused. *pp. 40, 41.*

SAME.—*Bill of Exceptions.—Filing After Signing.*— A record entry shows that on the 4th day of December, 1899, appellant filed its bill of exceptions number two, containing instructions and the evidence.  The bill purports to have been signed by the judge on the 2nd of January, 1900.  After such bill, some blank leaves intervening, there is a record entry as follows:  "Now comes the defendant by counsel and files its bill of exceptions herein."  *Held,* that it does not affirmatively appear that the bill containing the evidence was filed after it was signed by the judge, since it was not a bill of exceptions when filed on December 4th, and the entry following the bill on January 2nd does not identify the bill as number two.  *pp. 40-42.*

From Vanderburgh Superior Court; *John H. Foster,* Judge.

Action by Mary R. Sullivan against the Prudential Insurance Company.  From a judgment for plaintiff, defendant appeals.  *Affirmed.*

*J. E. Williamson, B. K. Elliott, W. F. Elliott* and *F. L. Littleton,* for appellant.

*C. B. Harris, O. J. Van Pelt* and *F. E. Monfort,* for appellee.

BLACK, J.—The appellant's demurrer to each paragraph of a complaint of the appellee consisting of four paragraphs having been sustained, and leave having been granted the appellee to amend, she filed four additional paragraphs of complaint numbered fifth, sixth, seventh, and eighth, a demurrer to each of which for want of sufficient facts was overruled.

In the fifth paragraph of complaint, after showing that the appellant is a corporation, its business being that of life

insurance, it was in substance stated that in November or December, 1898, the appellant and one William F. Sullivan entered into an agreement, by the terms of which the appellant agreed to insure the life of said William F. Sullivan and issue to him a policy upon his life for the term of twenty years, for the sum of $2,000, payable at his death, and proper proof thereof, within that period, to the appellee, who then was his wife and so remained until his death; "upon the condition that said William F. Sullivan be examined by a physician and the examination favorably acted upon by the" appellant; and in the event the policy was issued, it was to be in full force and effect from and after the date of its issuance, and the appellant would hold it in its possession until the 15th of January, 1899, upon which day said William F. Sullivan should pay the appellant the first quarterly premium, which was $22.70, and that he should pay the same amount as premiums every three months from the date of the issuance of the policy, all of which said payments William F. Sullivan agreed to make to the appellant; that he was examined by a physician under the direction of the appellant, and his examination was favorably acted on by the appellant, and the policy agreed upon was issued by the appellant to him on the 6th of December, 1898, and on that day, according to the agreement above stated, the policy became in full force and effect, and it so remained until after his death; that after the issuance of the policy and before his death, the appellant notified him and the appellee that it had been issued by the appellant and was in full force and effect for the benefit of William F. Sullivan and the appellee, and said William F. Sullivan and the appellant renewed said agreement hereinbefore set out, and agreed that the policy should be in full force and effect from the day of its issuance, notwithstanding any provisions or conditions to the contrary therein contained, and that the first premium should be paid on the 15th of January, 1899, that the appellant should hold the

policy in its possession until that day, and upon payment by said William F. Sullivan of said $22.70 on that day the appellant should deliver the policy to him, and if he should die before that day said $2,000 would be paid by the appellant to the appellee; that on the 10th of January, 1899, said William F. Sullivan died, and the appellant was by the appellee immediately thereafter notified and had knowledge thereof; that the 15th of January, 1899, was Sunday, and on Saturday, the 14th of January, 1899, the appellee tendered to the appellant the sum of $22.70 as the first premium as above stated and demanded of the appellant said policy; that the appellant refused to accept said sum of $22.70, and refused to deliver to the appellee said policy, and still refuses to accept said sum or to deliver to the appellee said policy; and the appellee "now brings into and deposits in court, for the benefit of the said defendant the sum of $22.70;" that afterward, on the 2nd of February, 1899, the appellee caused to be made the proper and necessary proof of the death of said William F. Sullivan, and delivered the same to the appellant, and demanded payment of it of said sum of $2,000, the amount payable to him as provided in said policy; and the appellant refused to pay the appellee said sum of $2,000 or any part thereof, and still so refused; that said policy was still in the possession of the appellant, as it had always been, etc. It was also alleged that William F. Sullivan during his lifetime complied with all the terms and provisions on his part "of said contract of insurance and said policy"; that the appellee during the lifetime of said William F. Sullivan and after his death complied with the terms, provisions and conditions on her part of said contract and said policy; that the appellant was owing the appellee, etc., which was due, etc. The paragraph also contained averments as to the identity of the appellee and her husband with the persons named in the policy. Wherefore, etc. The sixth paragraph was like the fifth,

except that it was alleged that the sum agreed upon and tendered as the first premium was $17.70 instead of $22.70.

In the seventh paragraph the averments of the preceding paragraphs relating to an agreement before the issuance of the policy were omitted, and it was shown that on the 6th of December, 1898, the appellant issued the policy to William F. Sullivan, and it was stated that the policy substantially provided that the first quarterly premium thereon of $22.70 should be paid in advance by him to the appellant on the delivery of the policy, and that he should pay the same amount every three months after the issuance of the policy; that after the issuance of the policy the appellant and William F. Sullivan agreed that the time of payment of said first premium should be extended and postponed until the 15th of January, 1899; that the appellant should hold the policy in its possession for William F. Sullivan until the 15th of January, 1899, and it should be in full force and effect as the contract of insurance between the parties thereto from and after the date of its issuance, December 6, 1898, the same as if the policy had been delivered to him on that day and he had paid the first premium at that time, and that he agreed to pay the first premium on that day. It was alleged that he died on the 10th of January, 1899, and the subsequent averments were substantially like those of the fifth paragraph. The eighth paragraph was like the seventh, except that it stated that the sum agreed upon and tendered as the first premium was $17.70 instead of $22.70.

The policy, as indicated by the exhibit filed with the complaint, was dated December 6, 1898, at Newark, New Jersey, and contained the following: "In consideration of the application for this policy, which is hereby made part of this contract, and of the quarter-annual premium of $17.38, which, it is agreed, shall be paid to the company in advance on the delivery of this policy and on or before the 6th day of March, June, September and December in every year during the continuance of this policy, the Prudential Insurance

Prudential Ins. Co. v. Sullivan.

Company of America promises", etc. Among the conditions of the policy was the following: "Premiums are payable at the home office of the company, but may be paid elsewhere on or before the dates when due, to authorized agents of the company in exchange for receipts signed by the president or secretary and countersigned by a general agent of the company."

It is assumed by the learned counsel for the appellant, in effect, that the fifth and sixth paragraphs of complaint are not based upon the policy, but proceed upon the theory that the contract therein declared upon was a contract for the issuance of a policy, and it is thereupon contended that to be sufficient they must be good on such theory; and it is pointed out that all the paragraphs show that a policy was in fact issued in which all prior parol negotiations must be regarded as having merged; and there can be no relief, it is claimed, in an action at law, upon the facts stated in these paragraphs. The seventh and eighth paragraphs are treated by the appellant as being theoretically predicated upon the policy itself, but upon the policy as modified by parol, and it is said that, if, to entitle the plaintiff to recover notwithstanding the terms of the policy, additional facts are required to be set up in the complaint, then the action is not upon the policy as exhibited, but upon the policy as modified; that it is not the theory of these paragraphs that the provision of the policy for payment of the premium in advance was complied with, but that something else was agreed to in lieu thereof. And it is said of the whole complaint, that the action is not upon the policy as originally drawn and set out in the exhibit, but it is upon a contract partly in writing and partly in parol, and therefore entirely in parol, and that for this reason the policy itself cannot become a part of the complaint by being referred to as an exhibit.

A preliminary agreement for insurance may be made by the agent of the insurer with the insured, which may be enforced in equity. Here the issuing of a policy, averred in

each of the paragraphs, in which the recovery was sought upon the policy itself, made resort to equity to compel the issuance of a policy unnecessary; and the proceeding is to be regarded as an action at law upon the policy. *Insurance Co.* v. *Colt,* 20 Wall. 560.

It is true that the terms of a written contract of insurance cannot be modified by proof of a prior or contemporaneous parol agreement; but an agreement relating to the custody of the policy does not contradict the expressed conditions of the policy itself, and the provision in a policy for the payment of the premium in advance or at a specific time is a stipulation for the benefit of the insurer and may be waived by an agreement to give credit for a part or all of the premium or to extend the time of payment.

We think that all the paragraphs of complaint may properly be said to be based upon the written contract, the policy, and to proceed upon the theory of a breach thereof by the defendant and performance of the conditions thereof to be performed by the plaintiff, except the condition relating to payment in advance of the premium, a condition inserted by the defendant for its own benefit, as to which it is sought in each paragraph to show that performance thereof was waived by the defendant by facts to be established by parol evidence. This does not amount to a modification or contradiction of the written contract, but rather to an affirmation of the entire contract as reduced to writing and an excuse on behalf of the plaintiff for failure to perform one of its conditions.

It was certainly allowable for the insurance company to give credit to the insured till a specified date for the advance premium and to stipulate that the policy duly issued upon the accepted application therefor should be in force as a binding contract from its date, the written evidence of the contract in the meantime to be in the custody of the company or of its agent or of any custodian that might be agreed upon by the parties. This is quite different from an agree-

ment that the policy should not be in force until actual delivery to the insured. We see no valid reason why the effectiveness of such an agreement made without fraud should be denied, if the parties deem it convenient to enter into it.

*Pino* v. *Merchants, etc., Ins. Co.,* 19 La. Ann. 214, was an action on a fire policy, the premium not having been paid and the policy not having been delivered until after the loss. The policy contained a condition that no insurance, original or continued, should be considered as binding until the actual payment of the premium. It was held that this condition being a stipulation in the insurance company's own interest, it had a right to waive it, that parol evidence was admissible to prove the waiver, and that such proof of waiver did not vary or contradict the written contract.

In *Young* v. *Hartford Ins. Co.,* 45 Iowa 377, the policy sued on provided that the insurer should not be liable until actual payment of the premium, and that no officer, agent or representative of the company should be held to have waived any of the terms and conditions of the policy, unless such waiver should be indorsed thereon in writing. It was held to be competent for a general agent of the company, at the time of the application for insurance when he agreed to issue the policy, to agree by parol to extend the time for the payment of the premium and to give the insured credit until the stated time for the premium and to promise that the policy should take effect from its date, and that the fact that the agent failed to indorse the waiver upon the policy would not prevent a recovery thereon.

In *Insurance Co.* v. *Colt,* 20 Wall. 560, the agents in Connecticut of a Pennsylvania insurance company, made a parol contract of insurance, the insurance to be binding on and from the date of the parol agreement, at a premium then agreed upon, credit for which was given by the agent until a date some months later, and it was agreed that the policy to be made should be kept by the agent till the date for the payment of the premium, for the convenience of the

insured. The property having been destroyed by fire after this parol agreement and before the policy had been made out, the agent then filled up a blank policy properly signed and countersigned, which he, upon tender of the premium, refused to deliver to the insured, but returned to the insurance company. A recovery at law upon the policy was affirmed.

A provision in a policy of insurance that no agent of the insurance company except its principal officers shall have power to waive or modify any condition of the policy, may itself be waived by the insurer 'and by the language and conduct of its agents having apparent authority to bind it. *Phenix Ins. Co.* v. *Caldwell,* 187 Ill. 73.

In *United States Ins. Co.* v. *Lesser,* 126 Ala. 678, 28 South. 646, it was held that the condition of a policy restraining the power of agents "to alter or waive any contract or condition on behalf of the company," was a condition reserved for the benefit of the company, of which it could take advantage, or which it could waive, and it could delegate to agents the implied power vested in the president in conjunction with the secretary or actuary. It was also held that a local agent, having been entrusted with the collection of the renewal receipt for the premium, could waive payment of the premium on the day appointed, deferring it until the return of rewritten policies from the home office in New York, or until there was a refusal to rewrite, of which the assured had notice.

The decisions in our own courts uphold the action of the court below. Where there has not been either payment of the advance premium as required by the policy or delivery of the policy to the insured, it requires strong proof, it has been said, to show a binding contract. See *Union Central Ins. Co.* v. *Pauly,* 8 Ind. App. 85.

The right to declare a forfeiture of a policy for the nonpayment of premiums may be waived, and the waiver may be manifested by conduct as well as by words. *Phenix Ins.*

*Co.* v. *Tomlinson,* 125 Ind. 84, 21 Am. St. 203, where the following is quoted from *Titus* v. *Glens Falls Ins. Co.,* 81 N. Y. 410: "But it may be asserted broadly that if, in any negotiations or transactions with the insured, after knowledge of the forfeiture, it recognizes the continued validity of the policy, or does acts based thereon, or requires the insured by virtue thereof to do some act or incur some trouble or expense, the forfeiture is as a matter of law waived;" etc.

An action may be maintained upon a policy of insurance which was not issued and the premium therefor was not paid until after the loss, if the contract of insurance contained in the policy began to run before the loss. *American Horse Ins. Co.* v. *Patterson,* 28 Ind. 17.

The delivery of the policy by the insurer to the insured is a waiver of a condition for the delivery of a premium note before the taking effect of the policy. *Behler* v. *German Mut. Ins. Co.,* 68 Ind. 347.

In *Phoenix Ins. Co.* v. *Hinesley,* 75 Ind. 1, an action on a life policy, it was held to be competent for the parties to the policy by their conduct and agreement to modify or change its terms in regard to the payment of the annual premium, both as to the amount and the time of such payment.

A general agent of a foreign insurance company, having authority, may waive a condition in the policy that the premium shall be paid in money. *Willcuts* v. *Northwestern Ins. Co.,* 81 Ind. 300. In that case it was held that an insurance company might waive stipulations in the policy as follows: "Agents having the receipts, and then only, will receive the premiums when due or before; but agents are not authorized to waive forfeitures, to make, alter or discharge contracts; and no receipt will be binding on the company unless signed by one of its officers, and countersigned by the agent. No agent has authority, in any case, to waive or postpone payment of premiums, and the assured is hereby notified that the only evidence to him of the authority of

an agent to receive any premiums on account of this policy is a receipt in printed form, signed by the president or secretary of the company."

In *Home Ins. Co.* v. *Gilman,* 112 Ind. 7, it is said to be well settled that payment of the premium in cash may be waived by an agent authorized to deliver policies and receive payment, notwithstanding a stipulation in the policy to the contrary; and that unless a policy so delivered is avoided by showing bad faith or collusion, it is enforceable; also, that if credit has been extended by the agent to the assured, it is a sufficient payment to the company to support the policy.

In *Terry* v. *Provident Fund Soc.,* 13 Ind. App. 1, it was said that when the company, which did not deny the execution of the policy under oath, recognized the regularity of the application and legitimacy of the channel through which it came, it placed the solicitor of the insurance who took the application upon the same foundation with other agents for soliciting and contracting for insurance, and was bound by his waiver of the condition that the advance premium must be paid at the home office.

In *Kerlin* v. *National, etc., Assn.,* 8 Ind. App. 628, 635, it was said that, "if, at the time the application is made, or the insurance is contracted, circumstances or conditions exist which are in conflict with the terms and conditions of the application or policy, and the agent of the company knew of their existence, 'and agreed that as to them the conditions' of the application should not be effective, the insurer can not take advantage of their existence to defeat a recovery after loss has occurred."

The appellant, under its assignment that the court erred in overruling its motion for a new trial, has presented argument upon the court's refusal to give certain instructions and upon the admission of certain evidence over objection, and upon the question as to the sufficiency of the evidence to sustain the verdict. A record entry shows that upon the 4th

day of December, 1899, the appellant filed "its bill of exceptions number two, which is in the words and figures following, to wit." Immediately thereafter in the transcript is a bill of exceptions containing the instructions given and those refused, and the shorthand reporter's longhand report of the evidence, which at the close thereof, after the reporter's certificate, is said to have been tendered to the judge on the 6th of October, 1899, which was within the time granted by the court when it overruled the motion for a new trial; and it purports to have been signed by the judge on the 2nd of January, 1900. Afterward in the transcript, some blank leaves intervening, there is a record entry under date of January 2, 1900, as follows: "Now here comes the defendant by counsel and files its bill of exceptions herein." In the clerk's certificate at the close of the transcript it is certified that the bill of exceptions number two, set out in the transcript, is the original bill of exceptions number two in the cause. An original bill of exceptions can not present to this court instructions to the jury, given or refused; and if the bill can be treated as in the record it can not be regarded as bringing up more than the evidence and the rulings on the trial relating to the introduction of evidence. *Leach* v. *Mattix,* 149 Ind. 146; *City of New Albany* v. *Lines,* 21 Ind. App. 380, 391; Acts 1897, p. 244, §650a Horner 1897, §638a Burns Supp. 1897. Furthermore, a bill of exceptions can not be regarded as properly before us when it does not affirmatively appear from the record that it was filed in court or in the clerk's office after it was signed by the judge. Section 641 Burns 1894, §§629, 650a Horner 1897, §638a Burns Supp. 1897; *Denman* v. *Warfield,* 20 Ind. App. 664; *McCormick, etc., Co.* v. *Smith,* 21 Ind. App. 617, and cases cited.

In the transcript before us it does not affirmatively appear that the bill containing the evidence was filed after it was signed. That which is called bill of exceptions number two was not in truth a bill of exceptions when it was filed on the

4th of December, 1899, for it was not signed by the judge until the 2nd of January following. The entry following this bill number two does not identify the bill filed on the 2nd of January, 1900, by designating it as bill of exceptions number two or by any reference or indication, and there is nothing in the transcript after this entry except the appellant's precipe and the clerk's final certificate, which does not state when bill of exceptions number two was filed. The entry of December 4, 1899, did not relate to a filing of the shorthand reporter's longhand report of the evidence as such, but purported to show the filing then of a bill of exceptions containing the instructions and the evidence. If it be assumed that the entry of January 2, 1900, related to the preceding bill number two, this would be adding something not expressed anywhere in the record, and it would seem not to be in harmony with the rule that it must affirmatively appear in the record that the bill was filed after it was signed.

Judgment affirmed.