## ROGERS *v.* AMERICAN NATIONAL INSURANCE
## COMPANY; *et vice versa.*

1. A clause in an insurance policy providing that the contract of insurance "shall not be valid until countersigned by" the agent of the company at the place where the insured resides may be waived; and if the policy of insurance be otherwise duly executed and valid, it will be binding upon the company.

(*a*) Allegations to the effect that the company delivered the policy and received the policy fee and premium provided by the policy to be paid, and that the company had treated the insured as a policyholder in mailing a postal-card informing him as to the rules of the company with respect to payment of monthly premiums, were sufficient to authorize the conclusion that the company waived the necessity of the signature of the local agent.

2. The policy provided that the premiums should be paid on the first of each month. It was alleged that certain premiums had been paid, and that the company had notified the insured that the premiums would be accepted if made by the eighth of the month. The insured was injured on the sixth of the month, and died on the eighth. On the seventh, the insured sent to the company the premium with the card containing the notice, and when delivered at the office those in charge tore up the card and refused to receive the premium. Properly construed, the allegations in regard to the premiums that had been paid had reference to premiums due prior to the first of the month, and the allegations with respect to notice by the company of extension of time for payment of premiums and tender of premiums within the time were sufficient to charge that the insured was not in arrears on the matter of payment of premiums.

3. The allegations relating to claim for attorney's fees and damages as provided in the statute were sufficient to withstand a general demurrer.

4. The evidence failed to support the allegations as to extension of the time of payment of monthly premiums, but showed affirmatively that the premiums were past due at the time the insured was injured, which, under the terms of the contract, rendered the policy ineffective. Accordingly, a judgment of nonsuit was proper.

AUGUST 15, 1916.

Action upon insurance policy. Before Judge Charlton. Chatham superior court. April 29, 1915.

Elizabeth Rogers, as beneficiary under an accident-insurance policy, instituted an action against the American National Insurance Company of Galveston, Texas. The defendant filed a demurrer to the petition, upon general and special grounds; some of which grounds were sustained and others overruled. The plaintiff amended to meet those grounds of demurrer which were sustained; and the defendant renewed its demurrer to the petition as amended,

which demurrer was overruled. The case proceeded to trial, and at the conclusion of the evidence a judgment of nonsuit was granted. The plaintiff filed a bill of exceptions in which the only assignment of error was upon the judgment of nonsuit. Thereafter in due course the defendant, having excepted pendente lite to the adverse rulings on demurrer, sued out a cross-bill of exceptions, assigning error upon the exceptions pendente lite, and upon certain rulings on the admissibility of evidence. The other material facts appear in the opinion.

*W. R. Hewlett* and *H. P. Cobb,* for plaintiff.

*Osborne, Lawrence & Abrahams,* for defendant.

ATKINSON, J. 1. This was an action against an insurance company, instituted by a beneficiary named in the policy of insurance, to recover an indemnity on account of the death of the insured, her husband, caused by accidental means against which the policy purported to insure. The petition set forth a copy of the policy of insurance, and alleged in general terms that the policy had been duly issued and assented to by the company and delivered by it to the insured, and that all the payments required thereunder had been duly made and the policy accepted by the insured. The policy was dated February 13, 1913, and the insured suffered an accident under circumstances as contemplated by the policy on March 6, 1913, producing the injury from which he died on March 8th. The plaintiff furnished proofs of death within the time provided by the policy, and the company refused to consider them or pay any amount under the policy. The insuring clause of the policy recites that the company, "in consideration of the policy fee, the premiums, and of the statements, agreements, conditions, and warranties in the schedule indorsed or printed hereon and made a part hereof, which statements the insured makes on acceptance of this policy and warrants to be true, does hereby insure [naming the plaintiff's husband], "subject to all of the conditions herein contained and indorsed hereon, from 12:00 noon, Central Standard time, of the day this contract is dated [February 13, 1913] until 12:00 noon, Central Standard time, of the first day of March, 1913, and for such further periods stated in the renewal receipts as the payment of the premium specified in the schedule will maintain this policy and insurance in force, against death or disability resulting directly, and exclusively of

all other causes, from bodily injury sustained solely through external, violent, and accidental means, said bodily injury being hereinafter referred to as 'such injury,' and against death and disability from any bodily disease or illness as follows;" etc. In the schedule it is provided that "the insurance is not effective until the policy has actually been issued by the company and the premium paid, and that the company is not bound by any knowledge of or statement made by or to any agent, unless written hereon. I further agree to accept the policy subject to all its conditions and pay the monthly premium of one and 95/100 dollars in advance without notice." Following this statement is the signature of the insured, and immediately following is the clause: "In witness whereof the said company has caused this policy to be signed by its president and the secretary; but the same shall not be valid until countersigned by F. A. Walter, agent of the company at Savannah, Georgia." Then follow the signatures of L. H. Collier, secretary, and W. L. Moody Jr., president. After these signatures appear the words, "Countersigned at Savannah, Georgia, on this 13th day of February, 1913;" but there was no signature to this statement.

It was urged by the demurrer that the petition did not allege a cause of action, because it appeared that there had not been a valid execution and delivery of the policy of insurance. The basis of this contention was that the paper contained the provision that "the same shall not be valid until countersigned by F. A. Walter, agent of the company at Savannah, Georgia," and, while signed by the president and secretary, it appeared from the face of the pleadings that it was not signed by the local agent at Savannah. In Kantrener *v.* Penn Mutual Life Ins. Co., 5 Mo. App. 581, it was said by Blackwell, J.: "The countersigning of the policy by the insurer's agent, though expressly required by the terms of the policy, is not absolutely essential; and where the intention to execute the contract is sufficiently apparent, it may be considered as waived and dispensed with." The case of Prall *v.* Mutual Protective Life Ins. Society, 5 Daly, 298, was an action upon a life-insurance policy. The defense, among other things, was that the policy had never been delivered, and that the consideration for the issuance of the policy had never been paid. On the trial the plaintiff produced in court the policy on Shader's life, duly executed by

the defendant, which recited that it was made in consideration of $12.56 "duly paid by Wesley E. Shader." It was also recited in the body of the policy that it was issued and accepted "upon the express conditions and agreements contained on the back hereof." One of these conditions was that the policy, although delivered, should not take effect or be put in force until the first premium was actually paid, and that no official or agent of the society had power or authority to deliver the policy until such actual payment, nor to waive the actual payment of the premium on the delivery of the policy. It was also recited in the body of the policy that it was to take effect "only when countersigned by D. G. Bloss, general agent at ———." The policy was not countersigned by D. G. Bloss, and on that ground the defendant objected to its being received in evidence. The objections were sustained, and the plaintiff excepted. In the opinion, it was said by Daly, C. J.: "The possession of the policy by the assured affords, in the absence of anything to the contrary, a presumption that it was delivered as evidence of a concluded contract. But the plaintiff was met by the difficulty in this case that the last clause in the instrument produced by him declared that 'the policy was to take effect only when countersigned by D. G. Bloss, general agent at ———,' the place being left blank, and there can be no presumption of a concluded contract from the possession, where the instrument has not been countersigned in the manner provided for. This condition may, of course, be waived; and if it had been shown that the premium had been received and the policy delivered by the company without having this indorsment put upon it, it would be regarded as waived." In Myers v. Keystone Mutual Life Insurance Co., 27 Pa. 268 (67 Am. D. 462), it was held: "Although a policy may expressly require the countersigning by an agent of the company, it may be dispensed with where the intention to execute is sufficiently plain." In Badger v. American Popular Life Insurance Co., 103 Mass. 244 (4 Am. R. 547), it was held: "A policy of life insurance which provides that it shall not be in force until countersigned by 'A. B., agent,' is invalid till so countersigned, although A. B. is himself the assured, and the policy has been received and retained by him." The opinion was in substance as indicated by the note quoted above, but concluded with the language: "There is no evidence tending to show that it was waived."

The clause in the policy under consideration was for the benefit of the insurer, which it could waive without injury to the insured or the beneficiary. When the clause is considered in connection with the allegations to the effect that the company delivered the policy and received the policy fee and premium required by the terms of the policy to be paid, and that the company had treated the insured as a policyholder in mailing a postal-card informing him as to the rules of the company with respect to the payment of monthly premiums, an intention to waive the necessity of the signature by the local agent is manifest. See also: 1 Cooley's Briefs on Insurance, 441; Kerr on Ins. 85, § 40; Terry *v.* Provident Fund Society, 13 Ind. App. 1 (41 N. E. 18, 55 Am. St. R. 217); Jurgens *v.* New York Life Ins. Co., 114 Cal. 161 (45 Pac. 1054, 46 Pac. 386).

2. Another ground of general demurrer was that it appeared from the pleading that, on account of non-payment of premiums when due, the policy was not in effect at the time of the injury to the insured. The policy fee was a sum separate and apart from the premium. It was alleged that the insured paid "an amount termed the policy fee . . some days prior to February 13, 1913, to one R. L. Clanton, the soliciting agent for the insurance company; the exact amount or date upon which said payment was made petitioner is unable to state." Also, that the insured paid "a certain sum of money on February 24th, covering a monthly premium of the policy." The policy provided that all such premiums should be paid on the first of the month, and, properly construed, the above allegations refer to payment of the policy fee and the premium for the month of February. There was no allegation of the payment of any premium for the month of March, but as an excuse therefor it was alleged that the insured received a notice from the company that such a payment would be accepted if made by the 8th of the month, and that acting upon the faith of such notice the plaintiff, on March 7th, sent an agent with the card and money with which to pay the premium to the office of the defendant, when those in charge of the office refused to receive the money, but took the card and destroyed it. We think this is a sufficient allegation that before the injury the company extended the time for payment of the premium under the policy for the month of March, and, notwithstanding the extension of time, re-

fused to accept the payment of the premium when tendered according to the rules which it had promulgated; and the petition was not subject to general demurrer on the ground taken.

3. In addition to suing for the amount agreed to be paid upon the death claim according to the terms of the policy, the petition also alleged that the company, in refusing to pay in accordance with the terms of the policy, had acted in bad faith, and by reason thereof petitioner had been compelled to employ counsel to enforce her rights in the premises; and thereupon she claimed 25 per cent. damages and $50 attorney's fees on account of the bad faith of the company in refusing to pay the sum. A demurrer was interposed to this part of the petition, on the ground that the allegation as to bad faith was a mere matter of opinion, and no facts were alleged upon which to base the allegation. It is declared in the Civil Code, § 2549: "The several insurance companies of this State, and foreign insurance companies doing business in this State, in all cases when a loss occurs, and they refuse to pay the same within sixty days after a demand shall have been made by the holder of the policy on which said loss occurred, shall be liable to pay the holder of said policy, in addition to the loss, not more than twenty-five per cent. on the liability of said company for said loss; also, all reasonable attorney's fees for the prosecution of the case against said company: Provided, it shall be made to appear to the jury trying the same that the refusal of the company to pay said loss was in bad faith." The effort to recover damages and attorney's fees was based on the foregoing statute. According to the allegations of the petition the insured was injured on March 6th, and died on March 8th, 1913. The action was commenced October 28, 1913, more than sixty days after the alleged filing of proofs of death. When considered in connection with other allegations of the petition, as indicated above, the allegation with respect to claim for attorney's fees did not amount to a mere expression of opinion, but was a sufficient compliance with the statute to authorize the plaintiff to go before the jury and ask for damages and attorney's fees as provided for in the statute.

4. On the trial the plaintiff failed to prove her case. When examined as a witness she testified to a payment of $2 made on the 24th of February to the soliciting agent, Clanton, at the time the policy was delivered; that at the time of the payment the agent

stated "that payment made $4, and gave receipt for it;" and that she never saw any other money paid to the company. She also testified: "When he got hurt he had received a postal-card, and under that he had to pay some money at the insurance company's office. I knew it had been due since the first of the month, and my husband was trying to raise it, but had not been able to do so up to the 6th of March. . . He got hurt on the 6th. That was the time we finally got the money up. . . Mr. Smith gave the money, and before he could get back home to me to send the money he got hurt. . . He got hurt between three and four o'clock. After he got hurt I sent the girl with the money. I went to the office after he died; that was the only time that I went to the office." The receipt referred to by the witness was introduced in evidence, and was as follows: "American National Insurance Company. (Incorporated by the State of Texas. Home office, Galveston, Texas.) No. [in lead pencil] 2. February 24th, 1913. Received from James Alton Rogers ———— [in small type] cents, which is a deposit on account of application this day made for insurance in the above-named company. No obligation is incurred by said company by reason of this deposit, unless said application is accepted, and until a policy is delivered by an agent of the company in person to the applicant. If this application of insurance be rejected, or policy not delivered, this deposit will be returned to applicant.     [Signed]   R. L. Clanton, Agent."

Another witness for the plaintiff testified, that in 1913 he had been employed by the defendant company in the local office at Savannah, and had seen printed cards containing notices to be sent out to policyholders; that these cards had printed thereon words something like these: "Must be paid on or before the 8th of March, or the policy will be void;" and that these cards were signed by the local agent. A blank card was produced by the defendant, under notice, as follows:

"American National Insurance Company.

Monthly premium Department.                     Galveston, Texas.

$200,000 deposited with the State Treasurer of Texas for the protection of Policyholders.

Your ———— on Policy No. ———— will be due and must be paid to American National Insurance Company, Accident Department, Galveston, Texas, or to ———— on or before ————

1st, 191—, or your policy of insurance will be void. Always take this notice to local collector, so he can find your name without delay. Policyholders making payments to other than the person named in this notice or at the home office do so at their own risk. The printing and mailing of this notice to a policyholder in arrears shall not be held to waive forfeiture or lapse of policy which may have occurred from any cause."

Another witness testified that she went to the company's office on the 8th and carried with her $1.95, and that the agent of the company refused to receive the money, but took the notification card and tore it up. There was evidence that the insured died on March 8th, from the accident received, and that the plaintiff notified the company of his death.

Considering all the evidence, it clearly appears that the only premium payment made and referred to in the receipt given by the company's agent was that due for February, and that the plaintiff and the insured knew that the premium for March was due on the first. There was no evidence that the company authorized the local agent to extend the time for payment. The policy contained the provision that premiums are due the first of each month in advance; and the further provision that "if the payment of any renewal premium shall be made at [after?] the expiration of this policy or the last renewal receipt, neither the insured nor the beneficiary will be entitled to recover for any accidental injury happening between the date of such expiration and 12:00 o'clock noon, Central Standard time, of the day following the date of such renewal payment." Inasmuch as the March premium was due on the first and had not been paid at the time of the injury, the policy was in arrears and the insurance theretofore existing was not operative. The effort on the part of the plaintiff to pay the overdue premium after the injury had been received was not in compliance with the terms of the contract, and the agent properly rejected the money when tendered.

*Judgment affirmed on both bills of exceptions. All the Justices concur.*