# Penn Mutual Life Insurance Company *v.* Norcross.

[No. 20,359.    Filed October 25, 1904.]

|163|379|
|164|375|
|164|498|
|164|687|

|163|379|
|165|635|

|163|379|
|167|85|

|163|379|
|170|340|

**Pleading.**—*Complaint on Insurance Policy.*—*Application for Policy Not Set Out.*—In an action by a beneficiary on a life insurance policy it is not necessary to make the application for such policy a part of such complaint, even though such application is attached to said policy pursuant to a statute. *p. 382.*

**Same.**—*Answer.*—*Non Est Factum.*—*Waiver.*—Where a complaint upon an insurance policy charges that such policy was "executed," an answer virtually denying the execution of the policy must be verified as provided by §367 Burns 1901 or the defendant can not be heard during the trial to deny the execution of the policy. There is no waiver by the plaintiff in failing to move to strike out such answer for failure of verification. *p. 385.*

**Same.**—*Failure to Plead Non Est Factum.*—*Effect.*—Where a written instrument is sued on, the defendant's failure to plead *non est factum* is a conclusive admission of the execution of the instrument. *p. 386.*

**Insurance.**—*Conditions Precedent.*—*Waiver.*—*Estoppel.*—Where an insurance company issues a life policy and does not deny the execution of the same, and it contains a clause providing "this policy does not take effect until the first premium shall have actually been paid," etc., it must be presumed that such policy was delivered by some officer or agent of the company with power to waive such provision, and that he did waive it, or that such company had received the consideration under circumstances such as to estop it from denying the validity of the policy. *pp. 387-389.*

**Pleading.**—*Laws of Foreign State.*—*Presumption.*—The laws of a foreign state must be pleaded as a fact to be available, mere conclusions not being sufficient, and where no allegations of fact are made, it will be presumed that the common law is in force. *p. 390.*

**Same.**—*Decision of Foreign State.*—It is not sufficient in pleading a decision of a foreign state simply to give the names of the parties, the page and the unofficial publication in which the decision may be found. *p. 390.*

**Insurance.**—*Mutual.*—*Participation in Earnings.*—The fact that an insurance company issues its policy for a fixed amount of insurance at a fixed rate and containing the provision, "this policy shall participate annually in the surplus earnings of the company in accordance with the regulations adopted by the board of trustees," does not place the policy on the footing of a benefit certificate. *p. 391.*

CONTRACTS.—*Lex Loci Solutionis.*—*Lex Loci Contractus.*—Where an answer in an action on a life insurance policy is drafted on the theory that the policy is governed by the laws of a foreign state where such policy is payable, it is not permissible to include in the same answer an allegation of an oral agreement contemporaneous with the delivery of the policy, limiting the rights of the plaintiff under the law of the forum, such allegation being contradictory to the theory of the answer. *pp. 391, 392.*

PLEADING.—*Demurrer to Answer.*—*Harmless Error.*—Where plaintiff in an action on a life policy alleges that she has performed all the conditions on her part (§373 Burns 1901), payment of the premium being one of them, and the defendant answers in general denial, and also affirmatively that such premium has not been paid, it is harmless error to sustain a demurrer to such affirmative answer, since the plaintiff must prove payment on the issue of general denial. *pp. 392, 393.*

INSURANCE.—*Life Policy.*—*Premium.*—*"Payment" of.*—Where a life insurance company delivers a policy to the insured, taking his note in payment thereof, it can not deny payment because not made in cash, although a provision in the policy provides that such policy shall not take effect until such "premium shall actually have been paid." *p. 393.*

SAME.—*Proof of Death.*—*Waiver.*—A life insurance company waives its right to a proof of death of assured when its supervisor of death claims denies the validity of the policy and gives the company's reasons therefor. *p. 394.*

NEW TRIAL.—*Amount of Recovery Too Large.*—Where a policy of insurance provides that such company may retain any unpaid premiums on final payment of the policy, but in an action fails to file any counterclaim for such unpaid premiums, the recovery of the full amount of the policy is proper. *p. 394.*

APPEAL AND ERROR.—*Supreme Court Rules.*—*Failure to Comply With.*—Where appellant has not set out in his brief the substance of the evidence given on the trial, nor the substance of the instructions given and refused, he thereby waives any error on account of the insufficiency of the evidence and of error in the instructions. *pp. 394, 395.*

From Superior Court of Vanderburgh County; *J. H. Foster*, Judge.

Action by Ida A. Norcross against the Penn Mutual Life Insurance Company. From a judgment for plaintiff on a verdict for $5,335.83, defendant appeals. Transferred from the Appellate Court under §1337u Burns 1901. *Affirmed.*

*A. J. Clark, G. D. Heilman* and *G. W. Pepper*, for appellant.

*G. F. Denby, R. C. Wilkinson* and *F. C. Gore,* for appellee.

GILLETT, J.—This was an action upon an instrument purporting to be a policy of insurance on the life of George A. Norcross in favor of his wife, the appellee, if she survived him; but, if not, the policy provided that it should be payable to the executors, administrators, or assigns of said George A. Norcross. The instrument purports to be signed by the president and secretary of the company. In part, it reads: "In consideration of the application for this policy, hereby made a part of this contract, the Penn Mutual Life Insurance Company of Philadelphia insures the life of George A. Norcross," etc. It is recited in said instrument that it is issued upon the condition of "the payment in advance to the company at its home office of the sum of $68.50 at the date hereof," and of the payment of the stipulated annual premiums as they thereafter mature. Provision was made in said instrument for the conversion of the policy into one of certain other forms of insurance upon the application of the "legal holders." The policy also contained the following provisions and conditions: "I. This contract is absolutely incontestable from date of issue for any cause except non-payment of premium." "III. This policy does not take effect until the first premium shall actually have been paid during the good health of the assured. All premiums are due and payable at the home office of the company in the city of Philadelphia, but they may be paid to agents, on or before the dates when due, in exchange for receipts signed by the president, vice-president, secretary, treasurer, or actuary. If not paid when due the policy shall be null and void. From any sum payable under this policy there shall be deducted the unpaid portion of the year's premium, if any, and any indebtedness to the company on account of this contract." "VIII. Pursuant to law, a copy of the application for this policy is attached hereto. No altera-

tion of this contract or waiver of any of its conditions shall be valid unless made in writing and signed by an officer of the company."

The complaint was in two paragraphs, to each of which a demurrer was overruled. Appellant filed six paragraphs of answer, to some of which a demurrer was sustained. There was a general denial filed. None of the answers was verified. There was a trial by jury, and a verdict and judgment for appellee. Appellant filed a motion for a new trial, but its motion was overruled.

It is first contended by appellant's counsel that each paragraph of the complaint was insufficient, for the reason that there was no exhibit of the application on which the policy purports to have been issued attached to the complaint. There is no merit in this objection. *Continental Life Ins. Co.* v. *Kessler* (1882), 84 Ind. 310; *Penn Mut. Life Ins. Co.* v. *Wiler* (1884), 100 Ind. 92, 50 Am. Rep. 769; *Phoenix Ins. Co.* v. *Stark* (1889), 120 Ind. 444. And see *Carnahan* v. *Campbell* (1902), 158 Ind. 226.

We shall endeavor to set out at least the substance of the paragraphs of answer to which a demurrer was sustained. The second paragraph of answer to the first paragraph of complaint charges, in terms, that the defendant is a mutual insurance company organized and existing under and by virtue of the laws of the state of Pennsylvania; that the contract sued on was executed in and subject to the laws of said state; that by the laws of Pennsylvania the beneficiary of the insured in a mutual insurance company, and particularly the defendant company, does not take and hold a vested interest in the policy on the life of the insured; that no premium was ever paid upon the policy or for the execution of the policy sued on; that said George A. Norcross executed his note for the full amount of the first premium, payable four months after date; that the note matured in his lifetime, and he defaulted the payment

of the same; that afterwards he executed to the defendant, in consideration of the surrender of the note to him, an instrument in writing assigning said policy to it. This instrument, which is set out in said answer, purports to be .an assignment of a policy answering the description of the policy in suit, executed on behalf of said Norcross, and as attorney in fact for all of the beneficiaries under the policy, in consideration of the surrender of a four-months' note for $68.50 given in settlement of the first annual premium of said policy; and the instrument concludes with an attempted release of the company from any obligation on account of said note.

The second paragraph of answer to the second paragraph of complaint seems to be the same in effect as the one stated in substance above, except that it sets out provision eight of said policy, and also an application which it is alleged that said George A. Norcross made in writing for said policy. The body of the application is as follows:

"I hereby warrant and agree    *    *    *    that the company shall incur no liability until this application has been received, approved, the policy issued thereon by the company, and delivered and paid for during my lifetime and good health; and that the policy applied for shall be in the form now in use by the company; and that the place of contract shall be in the city of Philadelphia, state of Pennsylvania."

The third paragraph of answer to the second paragraph of complaint charges that the defendant is a mutual insurance corporation existing under the laws of the state of Pennsylvania. The paragraph then sets up the application and provision eight of said policy. It charges that the laws of the state of Pennsylvania provide, and the courts of said state so construe the law of said state to be, that the beneficiary of the assured in a mutual insurance company, and particularly the defendant company, has no in-

terest in the policy until the death of the insured, and that the insured is authorized to surrender the policy without the consent of the beneficiary, and the paragraph concludes with the same allegations relative to the taking out and surrender of the policy as are found in the answer first mentioned above.

The fourth paragraph of answer relies on the law of Pennsylvania as a factor in the contract, it being alleged that at the time of the issuing of said policy it was, and ever since has been, "the law of Pennsylvania, as the same is reported and set out in the 3 Week. No. Cas. page 513, in the case of *Penn Mut. Ins. Co.* v. *Watson*," that the beneficiary had no interest in such a policy of insurance, and that the assured might surrender it. From that point the paragraph proceeds along the lines of some of the answers that we have referred to.

The fifth paragraph of answer is like the fourth, except that it sets out the application and contains some rather obscure allegations relative to a contemporaneous agreement between the agent and the insured, that if he did not pay the note he would execute the policy-surrender contract which we have mentioned above.

It may be said of each of said answers that it possesses the fault of commingling matters of fact that have no relation to each other. As was said in the opinion in *Platter* v. *City of Seymour* (1882), 86 Ind. 323, 326, and in substance often reiterated by this court: "To permit an isolated statement to control the scope and meaning of a long and involved pleading would be destructive of all certainty in pleading, result in injury to litigants, and impose upon the trial court the burden of looking into out of the way places to discover if disconnected and irrelevant allegations existed which might change the drift of the general averments of the complaint. Such a system would make pleadings mere traps for the ensnaring of the adverse parties, and would give to pleadings a protean character, which all

rules of practice condemn." We are greatly at a loss, because of the manner in which the pleadings under review have been prepared, to determine what the leading theory of each of said answers is. We have concluded, however, that we may reach the merits of this appeal, so far as concerns the assignments of error which draw in question the sustaining of the demurrer to said answers, without attempting to stamp a definite theory upon each of them. So proceeding, we may observe that they attempt to plead matters that it is claimed prevented the contract from having any inception, or else they set up matters relied on to avoid the continuance in force of the policy, by reason of its terms.

Of these matters in their order: Each paragraph of the complaint charged that the defendant executed the policy. Section 115 of the civil code (§367 Burns 1901) provides: "Where a pleading is founded on a written instrument, or such instrument is therein referred to; * * * such instrument or assignment may be read in evidence on the trial of the cause without proving its execution, unless its execution be denied by pleading under oath, or by an affidavit filed with the pleading denying the execution." There can be no waiver of the objection that such an answer is not verified by failing to move to strike it out, for the code contemplates that the effect of failing to deny the execution of the instrument under oath is to preclude the defendant from giving evidence upon the trial for the purpose of drawing the execution of the instrument into controversy. *Cincinnati, etc., Co.* v. *Chenoweth* (1899), 22 Ind. App. 685, and cases there cited. It has been directly held by this court that the sustaining of a demurrer to an answer which in effect denies the execution of the instrument sued on is a harmless error, since a right result is reached. *Allen* v. *Studebaker Bros. Mfg. Co.* (1899), 152 Ind. 406; *Pittsburgh, etc., R. Co.* v. *Hawks* (1900), 154 Ind. 547.

In *Home Ins. Co. v. Gilman* (1887), 112 Ind. 7, where an insurance company had filed an answer questioning the right of the agent to deliver the policy, this court said: "There was no answer of *non est factum,* nor was the seventh paragraph of answer verified.  So far, therefore, as the allegations of the answer go in denial of the execution of the policy prior to the date of the fire, they are immaterial.  The answer presented no issue relating to the execution of the policy."

In *Phoenix Ins. Co. v. Rowe* (1888), 117 Ind. 202, a question arose as to the effect of answers to interrogatories tending to show, among other things, that, if the insurance policy sued on had been delivered by the agent, he had no authority to do so without first collecting the premium, the premium not having been paid until after the loss.  In passing on the matter, Mitchell, J., speaking for the court, said:  "A failure to deny the execution of an instrument, which is properly set out as the foundation of the action, by a pleading under oath, has been held to be so far an admission of its execution as to preclude further controversy on that subject.  'The defendant ought to know better than anybody else whether he executed the note in suit or not, and if he will not deny it under oath, by a general or special *non est factum,* there is no hardship in holding the execution admitted.'  *Evans* v. *Southern Turnpike Co.* [1862], 18 Ind. 101; *Home Ins. Co.* v. *Gilman* [1887], 112 Ind. 7, 11; *Carver* v. *Carver* [1884], 97 Ind. 497; *Woollen* v. *Whitacre* [1880], 73 Ind. 198."  See, also, in this connection, *Terry* v. *Provident Fund Soc.* (1895), 13 Ind. App. 1, 55 Am. St. 217; *Prudential Ins. Co.* v. *Sullivan* (1900), 27 Ind. App. 30.

There being no effectual denial of the fact of delivery, the question arises whether the pleading of a breach in the conditions contained in the application and in the policy prevented the latter from having any inception.  It is ob-

vious that, no matter how resolutely a party declares beforehand that he will not be bound except by a contract of a specified character, yet, if he afterwards makes a contract in disregard of his declaration, his prior provision will avail him nothing. As applied to a corporation placing such a restriction in its undertaking, it is only a question whether there was a waiver by an agent competent to bind the corporation. Somewhere within the corporate body there must reside authority sufficient to modify by a new undertaking the most solemn contractual engagement that the corporation has entered into, for it can not by contract totally preclude itself from afterwards entering into an *intra vires* agreement providing for a change in the original contract. *Lamberton* v. *Connecticut Fire Ins. Co.* (1888), 39 Minn. 129, 39 N. W. 76, 1 L. R. A. 222. The power to abrogate or change a contract involves the power to waive conditions therein.

If a court is called on to interpret a writing purporting to be a contract, and the evidence shows that it was actually delivered as such by the person whose instrument it is, the court will not fail to consider the fact of delivery, if it be material, as an element in the intent of the parties. The provisions of a formal contractual writing, which a corporation has caused to be signed and placed in the hands of an agent for delivery, may be waived by the act of the agent himself, if he have sufficient power in the premises, or it may be the result of silence upon the part of the officers of the corporation after it had constructive knowledge of its agent's act in delivering the contract, at least where resolute good faith required a timely disaffirmance of his act.

Notwithstanding the limitations contained in the policy in suit, it purported to be a present contract; and if such a policy had been executed by a natural person, and delivered by his own hand, the holder would have been warranted in indulging the inference that the limitations which

it contained were not intended to be operative as conditions precedent to delivery, or else that, as conditions precedent, they had been waived.

In *Trustees, etc.,* v. *Brooklyn Fire Ins. Co.* (1859), 19 N. Y. 305, we find the following language: "A provision in a policy already executed and delivered so as to bind the company, declaratory of a condition that premiums must be paid in advance, manifestly has no effect except to impart convenient information to persons who may wish to be insured. As such a provision in the policy in question could have no effect upon the delivered and perfect contract in which it was contained, so it could have none to prevent the same parties from making such future contract as they pleased. In any subsequent agreement for a renewal or continuation of the risk, it was competent for the parties to contract by parol, and to waive the payment in cash of the premium, substituting therefor a promise to pay on demand or at a future day. Proof of such an agreement would have no tendency to contradict or to change the written policy already in force between the parties, and which would be wholly spent before the new agreement could take its place."

A valuable discussion of the subject is found in *Van Schoick* v. *Niagara Fire Ins. Co.* (1877), 68 N. Y. 434, where it was said that it "has been thought that the fact, that the insurer delivered to the insured the written contract, as the consummated agreement between them, and did not then exact present payment of the premium as a necessary precedent to delivery, was too plainly in contradiction with the condition for prepayment, for it is to be supposed that it was meant by the insurer or supposed by either party that it was intended to make that condition a potent part of the contract. Such a provision, it is said, could have no effect upon the delivered and perfect contract in which it was contained. * * * It would be imputing a fraudulent intent to the defendant

in this case, to say or to think that they did not mean, when they delivered this policy to the plaintiff, to give him a valid and binding contract of insurance, or that they did not mean that he should believe that he had one, or that they did not suppose that he did so believe. And such imputation can be avoided, only by supposing that it had overlooked this condition, and so forgotten to express the fact as to the building, in writing, upon the policy; or that it waived the condition, or held itself estopped from setting it up. The condition of prepayment of premium is, like this under consideration, one at the threshold of the making of the contract, and if it is not observed, no valid contract is made unless it is stepped over or thrust aside. It is consistent with fair dealing and a freedom from fraudulent purpose, to hold that one or the other was done; that is, that there was waiver, or is estoppel." In a later New York case the court stated: "It is so obviously just that a party to a written contract should be precluded from defeating it by asserting conditions and stipulations contained in it which would prevent its inception and which he knew at the time he delivered it and accepted the benefits were contravened by the actual facts, that any statement of the reasons upon which the rule rests is no longer necessary." See *Wood* v. *American Fire Ins. Co.* (1896), 149 N. Y. 382, 44 N. E. 80, 52 Am. St. 733.

In view of the fact that the pleadings of appellant present no question as to the delivery of the policy, it must be presumed that it was delivered by some officer or agent who represented the power of the company to waive all conditions precedent, or else that the circumstances were such that as against appellee the company had become estopped to deny the validity of the instrument. The indulgence of either of these presumptions as against answers setting up conditions intended to precede a delivery of the policy makes it necessary to hold that the pleading of matter of that character, unsupported by an oath, can not avail.

We shall now consider the effect of those allegations which do not go to the question of execution. The charges in the answers relative to what was the law of Pennsylvania were insufficient, since they were mere conclusions. In the absence of any averment upon the subject, the courts of this State indulge the presumption that the common law is in force in Pennsylvania, and therefore they will judge what that law is for themselves, where there is no controlling averment upon the subject. It is not, therefore, proper merely to allege what the law of Pennsylvania was at the time of making a Pennsylvania contract. *Irving* v. *M'-Lean* (1835), 4 Blackf. 52. If a pleader relies on a decision by one of the higher courts of another State as establishing the law of that State, he can not rely on an averment of the existence of a decision that for aught that appears may have been rendered by a trial court. As a matter of fact, the publication known as the Weekly Notes of Cases is unofficial; and the report of the case of *Penn Mut. Ins. Co.* v. *Watson, supra,* as set forth in said publication, shows merely that the court of common pleas, sitting as a court of equity, under the averments of a declaration tending to make out a case in which the interest of the beneficiary never attached, ultimately entered a decree of cancelation against the beneficiary. In ordinary insurance contracts, which are not merely benefit certificates, it is held by the courts of the several States, almost without exception, that, after the policy has gone fully into force, the beneficiary has an interest which is only subject to divestiture to the extent provided for in the policy. See 3 Am. and Eng. Ency. Law (2d ed.), 980, and cases there cited. This is certainly the law of Indiana *(Pence* v. *Makepeace* (1879), 65 Ind. 345; *Wilburn* v. *Wilburn* (1882), 83 Ind. 55; *Kline* v. *National Ben. Assn.* (1887), 111 Ind. 462, 60 Am. Rep. 703; *Mason* v. *Mason* (1903), 160 Ind. 191), and this we judge to be the law of Pennsylvania. See *Entwistle* v. *Travelers Ins. Co.* (1902), 202 Pa. St. 141, 51 Atl.

759. A leading writer on the law of insurance says: "While the beneficiary lives no surrender of the policy without his assent, or nonpayment of premiums after such surrender, will defeat his right. A surrender of the policy by the husband for the wife is ineffectual if without her authority." May, Insurance (4th ed.), §399 P. And see particularly *Matter of Booth* (1882), 11 Abb. N. Cas. 145; *Garner* v. *Germania Life Ins. Co.* (1888), 110 N. Y. 266, 18 N. E. 130, 1 L. R. A. 256; *Manhattan Life Ins. Co.* v. *Smith* (1886), 44 Ohio St. 156, 5 N. E. 417, 58 Am. Rep. 806.

We realize that the observations we have indulged in concerning the rights of the beneficiary as a matter of general law are not strictly called for, since the paragraphs of answer under consideration, viewed as paragraphs setting up the law of another State, stand condemned for the lack of sufficient averments as to what was the Pennsylvania law; but we have thought it not improper to indulge in some further observations relative to said answers, for the purpose of showing that there was probably no merit in the attempt to inject the law of Pennsylvania into the case.

The charge which is found in said answers, to the effect that the defendant was a mutual corporation, if not a mere conclusion, will not avail to show that the beneficiary was without right in the policy. The question is largely one as to the nature of the contract. The fact that an insurance company, issuing a policy exacting a fixed rate of premium for a fixed amount of insurance, provides in its policy, as was done in the agreement in suit, that "this policy shall participate annually in the surplus earnings of the company in accordance with the regulations adopted by the board of trustees," does not place the contract on the footing of a mere benefit certificate.

As to the allegations of the fifth paragraph of answer, to the effect that there was an oral agreement at the time the policy was delivered that it should be surrendered if the

note was not paid, we are persuaded that they must be rejected, as in conflict with the general theory of that paragraph that the policy was a Pennsylvania contract. A pleader can not be permitted to draft his answer for the purpose of presenting the proposition that the law of the place of the contract was such that the person suing never had any present right in the contract, and then, when he finds that his charge as to what was the foreign law is insufficient, fall back on the theory that there was an agreement contemporaneous with delivery which limited the rights of the plaintiff under the law of the forum.

The allegation found in said answers that no premium was paid on the policy, or for its execution, can not be segregated from its associated averments, and treated as a general denial of the allegation of performance. Disregarding for the moment the charges concerning the law of Pennsylvania, and it would appear that the purpose of the pleader was to rely either upon the fact that the note was not paid at its maturity, or else that, in view of the application, or the conditions of the policy, the contract could not go into force until the first premium was paid in cash. But, in view of the condition of the issues, we think that for another reason the existence of said allegation in the answers under consideration does not furnish cause for reversal. Section 120 of the civil code (§373 Burns 1901) provides: "In pleading the performance of a condition precedent in a contract, it shall be sufficient to allege, generally, that the party performed all the conditions on his part. If the allegation be denied, the facts showing a performance must be proved on the trial." The purpose of this section was to simplify pleadings in actions upon contracts, by rendering it unnecessary for the pleader to allege how he performed those conditions which are precedent to the right of recovery. This is the effect of the holdings of this court in a number of insurance cases. *Aetna Ins. Co.* v. *Kittles* (1881), 81 Ind. 96; *Modern Woodmen of America* v.

*Noyes* (1902), 158 Ind. 503; *Security, etc., Assn.* v. *Lee* (1903), 160 Ind. 249. "Payment is a question of intention between the creditor and the debtor; and there is no reason why a promissory note may not be given and accepted as payment, as well as other kinds of property that are not money. 'The word "payment" is not a technical term; it has been imported into law proceedings from the exchange and not from law treatises.' 2 Greenleaf, Evidence, §516." *Bradway* v. *Groenendyke* (1899), 153 Ind. 508. And see *Willcuts* v. *Northwestern Mut. Life Ins. Co.* (1882), 81 Ind. 300. The legal effect of a transaction is to be pleaded, and not the evidence of it, and it must be held that the effect of the general allegation of performance found in each paragraph of the complaint tendered an issue upon the matter of payment. In this view, since the general denial was pleaded to the second paragraph of the complaint, which was broad enough to admit the introduction of all evidence necessary to uphold the verdict, the sustaining of a demurrer to special paragraphs of answer pleading a default in the payment of the premiums was harmless.

In Elliott, App. Proc., §669, it is said: "In holding a defective paragraph good the court adjudges that if the party by whom it is pleaded proves it he will be entitled to recover. No such thing is adjudged where a demurrer is sustained to one paragraph of several. It is true that it is adjudged that the paragraph is insufficient, but no harm can result from such a ruling, if, in fact, no competent evidence is excluded, and it is not excluded if other paragraphs are left standing which entitle it to admission." Where the issue under which the evidence is admissible is formed by a general denial, it makes no difference whether it is on file at the time of the ruling, or is filed afterwards, since no additional burden is put on the appellant. See *Field* v. *Noblett* (1901), 154 Ind. 357.

If an insurance company delivers a policy under such circumstances that it goes into force at once, and accepts in

lieu of cash the promissory note of the person insured, made payable to the company, and the note is delivered and accepted as payment, the failure to pay the note will not forfeit the policy. *Kline* v. *National Ben. Assn.* (1887), 111 Ind. 462, 60 Am. Rep. 703; *Stewart* v. *Union Mut. Life Ins. Co.* (1898), 155 N. Y. 257, 42 L. R. A. 147.

The posture of this case is not such that it is necessary to consider the question as to what extent insurance agents may waive payment in cash. The requirement of "actual payment" in the policy does not exclude all other methods of payment which are not made in cash. The premium may be paid by the credit of the assured, if so accepted.

Appellant seeks to raise a further question based on the form of the demurrer which the court sustained to said special paragraphs of answer. As a right result was reached in ruling upon the sufficiency of said pleadings, the form of the demurrer has now become immaterial. *Wray* v. *Fry* (1902), 158 Ind. 92; *Hall* v. *Campbell* (1903), 161 Ind. 406.

Appellee pleaded a waiver of proof of loss, and the evidence tended to show that there was such a waiver. *Germania Fire Ins. Co.* v. *Pitcher* (1903), 160 Ind. 392. The declaration of appellant's supervisor of death claims relative to the ground of the company's refusal to pay said loss was not hearsay, but was competent evidence tending to prove a waiver of proof of loss.

A few further points remain concerning the introduction of evidence, but as the rulings relative thereto appear to us to have been harmless, we do not pause to discuss those matters.

There was no counterclaim based on the right which the policy reserved to deduct all indebtedness on account of the policy, and therefore the amount of the recovery was not too large.

No question is made in the points in appellant's brief as to the sufficiency of the evidence to sustain the verdict, and

the substance of the evidence given upon the trial has not been set out in appellant's brief. We may, therefore, omit any consideration as to the sufficiency of the evidence.

Because of the failure of appellant's counsel to comply with rule twenty-two of this court, in their omission to set out in their brief the substance of the instructions given and refused, all questions relative to instructions must be treated as waived. *Chicago, etc., R. Co.* v. *Wysor Land Co.* (1904), *ante,* 288.

We find no error. Judgment affirmed.