FEDERAL LIFE INSURANCE COMPANY *v.* WEEDON, ADMINISTRATOR.

[No. 9,403. Filed February 28, 1918. Rehearing denied May 2, 1918. Transfer denied November 21, 1918.]

1. INSURANCE.—*Life Insurance.—Action on Policy.—Complaint.— —Sufficiency.*—In an action on an insurance policy, where the complaint alleged that the insurer refused to accept premiums and annual dues unless insured consented to the placing of an unlawful lien upon the policy, it was unnecessary to allege or prove an offer to perform. p. 536.

2. APPEAL.—*Review.—Ruling on Demurrer.—Scope of Review.—* Where a demurrer to the complaint was overruled, the only objections available on appeal under §§344, 348 Burns 1914, Acts 1911 p. 415, are those specified in the memorandum accompanying the demurrer. p. 536.

3. INSURANCE.—*Life Insurance.—Action on Policy.—Complaint.— Failure to Set Out Reinsurance Contract.*—In an action on an insurance policy which was reinsured by another company, the complaint is not defective for failure to allege that the reinsurance contract between the companies was written, or because it was not made part of the complaint. p. 536.

4. INSURANCE.—*Life Insurance.—Action on Policy.—Answer.—Sufficiency.*—In an action on a life insurance policy which was reinsured by a successor to the issuing company, an answer alleging that the insured accepted the reinsurance policy, including the

terms and conditions of the reinsurance contract between the companies and denying that insured performed its conditions, is defective as being an argumentative denial. p. 537.

5. APPEAL.—*Review.—Harmless Error.—Ruling on Demurrer.*— Error, if any, in sustaining a demurrer to a special answer, is harmless where all the material facts properly pleaded therein were admissible under the general denial. p. 538.

6. INSURANCE.—*Reinsurance.—Rights of Insured.*—A reinsurance contract authorized by §4753 Burns 1914, Acts 1897 p. 318, §15, relating to the transfer of risks between insurance companies is invalid in so far as it attempts to waive or destroy insured's existing rights. p. 538.

7. APPEAL.—*Review.—Harmless Error.—Variance.—Statute.*—Under the provisions of §400 Burns 1914, §391 R. S. 1881, an alleged variance between pleading and proof regarding the name of an insurance company, whose policies defendant company reinsured, will be deemed immaterial where it is not shown that defendant was misled to its prejudice in maintaining its defense upon the merits. p. 539.

8. TENDER.—*Waiver.*—A formal technical tender is not waived by a mere assertion of a lien or claim in excess of the amount due, since a tender of the proper sum might be accepted. p. 541.

9. INSURANCE.—*Life Insurance.—Action on Policy.—Insurer's Refusal to Perform,—Evidence.*—In an action on a life insurance policy, the insurer's letter to insured notifying him of certain liens on the policy, *held* to warrant the inference that the insurer would refuse to accept premiums, unless insured consented to the placing of such liens on the policy, so that an offer by insured to perform was unnecessary. p. 541.

From Clinton Circuit Court; *Joseph Combs,* Judge.

Action by George W. Weedon, administrator with the will annexed of the estate of Elsie McMurray Hartman, against the Federal Life Insurance Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Charles A. Atkinson, Sheridan & Gruber* and *Larz A. Whitcomb,* for appellant.

*William L. Barnum, Jr.,* and *Owen E. Brumbaugh,* for appellee.

IBACH, C. J.—Appellee brought this suit on a policy of insurance issued by the Masons' Union Life Association July 23, 1892, on the life of James S. McMurray (hereinafter referred to as the insured) for $3,000, payable to the decedent or her heirs, and on a policy of reinsurance issued to the insured by appellant dated July 16, 1904.

The complaint is in three paragraphs, to each of which a demurrer for want of facts was overruled, and appellant answered in six paragraphs, the first a general denial and five paragraphs of special answer. A demurrer to each paragraph of special answer was sustained. There was a trial by the court without the intervention of a jury, and upon request the court made a special finding of facts and stated its conclusions of law thereon, which are in substance as follows:

On July 23, 1892, the Masons' Union Life Association was a mutual life insurance company organized and existing under the laws of this state and engaged in the business of insuring its members, but not for pecuniary profit. On that date the insured became a member of said association, and upon the payment of a premium of $9 and an agreement to pay a like sum on or before the 20th day of each month for fifteen years, together with certain dues, amounting to $9 annually, the association issued to him a policy of insurance or certificate of membership No. 1719, whereby it promised and agreed to pay to his daughter, the decedent herein, or her heirs, as beneficiary, the sum of $3,000 upon satisfactory proof of the death of the insured. On January 13, 1897, the name of said association was changed to the Union Life Insurance Company. The insured in all things kept

and performed the matters and things which were on his part to be kept and performed according to said policy of insurance from July 23, 1892, up to and including July 16, 1904. The appellant, Federal Life Insurance Company, was on July 16, 1904, and ever since has been, and now is, a corporation duly organized and existing under and by virtue of the laws of the State of Illinois, is now, and was at the times mentioned in the finding, engaged in the business of insuring the lives of persons for pecuniary profit. On the date last mentioned, through a certain business transaction, the Union company transferred and appellant took over all of its property and assets and members and outstanding insurance risks on the lives of persons then in existence in the Union company, including that of the insured. For and in consideration of such transaction and transfer, appellant assumed and guaranteed the liability of the Union company to the insured and his beneficiary, Elsie K. McMurray Hartman, she having previously intermarried with, and then was the wife of, one Charles W. Hartman, under his policy above referred to, and issued to the insured its certain contract of insurance in the words and figures following:

"Incorporated under the Laws of Illinois.
"Federal Life Insurance Company.
"Chicago.

"Number                                    Amount
8166                                        $3000
"This Policy of Reinsurance is Issued to James S. McMurray
"to be attached to certificate or policy No. 1719 of the Union Life Insurance Company of Indiana, and subject to all the provisions of the con-

tract of reinsurance between said Union Life Insurance Company and this company, dated July 16, 1904, constitutes policy No. 8166 of the Federal Life Insurance Company of Chicago, Illinois. Whereas, the said Federal Life Insurance Company does hereby assume the foregoing certificate or policy of said Union Life Insurance Company in accordance with the terms of said reinsurance contract, Now Therefore, this policy and the said certificate to which it is to be attached constitute the holder thereof a policy holder of the said Federal Life Insurance Company, and the said Federal Life Insurance Company hereby assumes and guarantees any liability which may hereafter be established on account of such original policy or certificate subject to the terms and conditions hereof and of said reinsurance contract; Provided that all premiums required to maintain such policy or certificate in force shall be paid to the said Federal Life Insurance Company as provided in said original policy or certificate and said reinsurance contract. No change of policy or certificate further than the attachment of this reinsurance policy to said policy or certificate of the said Union Life Insurance Company is necessary in order to bind the said Federal Life Insurance Company to the payment of the same, subject to the provisions hereof and of said reinsurance contract. In witness whereof,'' etc.

From July 16, 1904, up to the —— day of August, 1905, the insured, ''in all things fully observed, kept, performed and fulfilled all and singular the matters and things which were on his part to be observed,

kept, performed and fulfilled according to the conditions, form and effect of the said policy or contract of insurance.'' On June 27, 1905, appellant notified the insured that it would not pay his beneficiary the sum of $3,000 in the event of his death, but would only pay said sum less a certain reserve lien on said policy of $354.35, which appellant asserted existed against said policy, and demanded of insured that he pay, in addition to the premium and annual dues provided in his said contract, the further sum of $17.72 annually in advance as interest at five per cent. upon said so-claimed reserve lien, and further notified the insured that it would not thereafter accept and receive from him the premiums and annual dues thereafter under the terms of said original contract to become due and payable, except upon condition that he would consent and agree to the placing of said so-called reserve lien upon his policy. The insured was at all times ready and willing to pay at the time the same became due the subsequently accruing premiums and annual dues according to the terms and tenor and effect of his original contract with the Union Life Insurance Company, but refused to consent to the placing of said reserve lien upon his policy, and refused to pay the $17.72 annual interest on said lien. On July 12, 1905, the insured was further notified by appellant that there was a certain impairment lien of $2,103.70 against his policy, but if he would take another medical examination and the report thereof should be satisfactory to them, the company would remove said impairment lien. Upon receiving information from appellant of the placing of said liens against his policy, the insured wrote appellant and inquired what his policy would be worth at that time in case of his

death, and appellant informed him that his policy of $3,000 would only be worth that sum less the amount of the two liens, to wit, $2,457.42. Thereafter the insured refused to pay any more premiums or annual dues upon said policy of insurance, and appellant did on July 23, 1905, when the next premium and annual dues became due, declare the policy canceled and of no effect, because of the refusal of the insured to consent to the placing of said liens against his policy, and of his refusal to pay the additional premium and interest on the so-called reserve lien. On July 14, 1905, the insured wrote appellant a letter asking it to designate a medical examiner, and stating that he would take the examination on July 15, 1905. The appellant designated Dr. Doyal of the city of Frankfort, Indiana, to make such examination, and so notified the insured. The latter made application to and was examined by Dr. Doyal at the expense of appellant for the removal of said impairment lien, and said application and examination were received at its home office in Chicago, August 4, 1905, and the said impairment lien upon said policy was removed, and on August 5, 1905, the insured was notified of that fact, and that the item of $19.44 was credited on said reserve lien. On February 25, 1908, the insured died, leaving the beneficiary named in the original policy surviving. The Union Life Insurance Company after July 16, 1904, when it transferred all of its assets and insurance risks to the appellant, ceased to exist, and did not thereafter maintain any office for the transaction of business.

Other findings relating to the death of the beneficiary, the probate of her will, demand for payment, and proof of death are omitted.

Upon such finding the court stated its conclusions of law, to the effect that there is due, and the plaintiff is entitled to recover from the defendant the sum of $3,000, with interest at the rate of six per cent. per annum from and after May 18, 1910.

Numerous errors are assigned and relied on for reversal. The first to fifth, inclusive, relate to the sufficiency of the complaint and each paragraph thereof. It is claimed that the third paragraph is insufficient, because it does not allege any offer on the part of the insured to comply with his part of the agreement. It is alleged in said paragraph, among other things, that appellant notified the insured that it would not accept the premiums and annual dues under the terms of said contract, except upon condition that he would consent and agree to the placing of a reserve lien, etc., on his policy, which was unlawful and in violation of the contract between the insured and said association, which the appellant assumed. Under such circumstances it was not necessary to allege or prove an offer to perform on the part of the insured. *Willcuts* v. *Northwestern, etc., Ins. Co.* (1882), 81 Ind. 300, 312.

The only other objections pointed out by the memorandum accompanying the demurrer to such paragraphs, and consequently the only objections available here (§§344, 348 Burns 1914, Acts 1911 p. 415) are, in effect, that the reinsurance contract is not alleged to be in writing and is not made a part of the second and third paragraphs of complaint. These questions have been passed upon by the Supreme Court and this court, and the principles of law involved firmly set-

tled against the contention of appellant. *Federal Life Ins. Co.* v. *Kerr* (1910), 173 Ind. 613, 89 N. E. 398, 91 N. E. 230; *Federal Life Ins. Co.* v. *Petty* (1912), 177 Ind. 256, 97 N. E. 1011; *Federal Life Ins. Co.* v. *Arnold* (1910), 46 Ind. App. 114, 90 N. E. 493, 91 N. E. 357; *Federal Life Ins. Co.* v. *Risinger* (1910), 46 Ind. App. 146, 91 N. E. 533; *Federal Life Ins. Co.* v. *Lillibridge* (1912), 51 Ind. App. 704, 98 N. E. 1015.

Assignments of error 6 to 10, inclusive, call in question the sufficiency of each paragraph of special answer. The second, third, and fourth paragraphs may be discussed together. In each of said paragraphs it is alleged, among other things, that the 'insured received and accepted said reinsurance policy, *including the terms and conditions of said reinsurance contract,* and then denies that the insured performed according to the conditions of said *contract of reinsurance.* We think the facts pleaded bring these answers within the principle that "a plea setting up a different contract from the one declared on is 'bad as amounting to the general issue." It is an argumentative denial of the contract instead of being a direct denial. 9 Cyc 731, 732; *Kimball* v. *Boston, etc., R. Co.* (1882), 55 Vt. 95, 99; *Hayselden* v. *Staff* (1836), 5 Ad. & Ell. 153.

In the case last cited Lord Denman said: "What, in correct language, may be said to amount to the general issue is, that, for some reason specially stated, the contract does not exist in the form in which it is alleged, and, where that is the case, it is an argumentative denial of the contract, instead of being a direct denial; and which, according to the correct rules of pleading, is not allowed."

Furthermore, appellant was not harmed by said rulings for all the material facts properly pleaded therein were admissible under the general denial. *Penn Mut. Life Ins. Co.* v. *Norcross* (1904), 163 Ind. 379, 393, 72 N. E. 132.

In this connection it may be said that all the evidence offered by appellant was in fact admitted under the general denial and all the specific facts alleged in its several answers were found by the court and therefore appellant could not have been harmed.

The fifth and sixth paragraphs are not materially different from those discussed, except that in each there is an attempt on the part of appellant to show that the insured (through certain acts and conduct, specifically averred) became bound by the contract of reinsurance between the two companies and with all the terms thereof; that by failing and refusing to comply with the conditions thereby imposed his policy was abandoned and allowed to lapse.

If we are correct in our former conclusion, then these paragraphs are also bad for the same reason given in our discussion of the second, third and fourth paragraphs. We are not confined, however, to that reason alone. The statute under which the transfer is authorized and made is a public law (§4753 Burns 1914, Acts 1897 p. 318) and enters into the contract itself. That statute contemplates the transfer of all risks as they stand related to the original insurer at the time of the transfer. Whatever force the so-called reinsurance contract may have, if it has any, beyond the assumption of liability, is the obligation assumed by the reinsurer of that which the former contract and law impose. This is not an ordinary contract such as an individual

could have made, but is a contract made for the insured pursuant to statute, and that statute manifestly intends that in the reinsurance it shall be the taking over of the obligations of the one company by the other, as they exist at the time. Under such statute and the construction placed thereon by the Supreme Court of this state we must hold that the reinsurance contract between the Union Life Insurance Company and appellant is invalid so far as it attempts to waive or destroy subsisting rights of the insured. *Federal Life Ins. Co.* v. *Kerr, supra; Federal Life Ins. Co.* v. *Petty, supra; Federal Life Ins. Co.* v. *Arnold, supra.* The allegations in said paragraphs with reference to the reinsurance contract therefore were immaterial and no substantial right of appellant was affected by the sustaining of said demurrers.

It is next insisted by appellant under its motion for a new trial that the findings of the court are not sustained by sufficient evidence. Considerable space in its brief is devoted to a discussion of an alleged variance between the pleading and proof with respect to the names of the original company. It is not shown that appellant was misled to its prejudice in maintaining its defense upon the merits, and therefore such variance must be deemed immaterial. §400 Burns 1914, §391 R. S. 1881. It is not disputed that policy No. 1719, issued by the Masons' Union Life Association, which company afterwards changed its name to the Union Life Insurance Company, was one of the policies taken over by appellant under its contract of reinsurance with the last-named company. Whether or not a change of name could be perfected in the manner shown by the evidence is not a proper subject to be litigated in this

action. The acts of the corporation cannot be collaterally attacked in this way. The error, if any, was harmless.

It is apparent from the finding of facts that it is based on the third paragraph of complaint. Appellant, in discussing the sufficiency of the evidence, contends that the third paragraph alleges both full performance and an excuse for nonperformance, and that the finding contains both findings of full performance and excuse for nonperformance, and is therefore contrary to law, and is not supported by any evidence. Neither the third paragraph nor the finding referred to are subject to the construction counsel for appellant seek to place upon them. There is an allegation and a finding of performance up to the time the insured was notified by appellant that future payments would not be accepted and an excuse for not making or tendering further performance.

Appellant further contends that there is no evidence to support or tending to support the finding that it "would not thereafter accept and receive from him (the insured) the premiums and annual dues thereafter under the terms of the original contract to become payable except on condition that he would consent and agree to the placing of said so-called reserve lien   *   *   *   upon his said policy;" or that the insured "was at all times thereafter ready and willing to pay at the time the same became due the subsequently accruing premiums and annual dues" according to his original contract.

The theory of the third paragraph of complaint is that the insured performed his contract until notified by the company that it would not accept further performance in accordance with the original policy, and

alleges his readiness and willingness to fully perform on his part, and is based on that principle of law that, where one party avows an intention not to perform, it will excuse the other from offering to perform his part of the contract.

It has been held that an insurance company, by demanding more than it is entitled to receive, and notifying the insured that nothing but a compliance with the demand will be deemed performance, will excuse the latter from tendering the premium. *Willcuts* v. *Northwestern, etc., Ins. Co., supra.*

But, before it can be said that a formal tender is waived, the tenderee must have placed himself in such position as would make a tender an unnecessary act. A formal technical tender is not dispensed with by a mere assertion, without more, of a lien or claim in excess of the actual amount due, for a tender of the proper sum might be accepted. *Indiana Bond Co.* v. *Jameson* (1899), 24 Ind. App. 8, 12, 56 N. E. 37; *Hoyt* v. *Sprague* (1872), 61 Barb. (N. Y.) 497; 38 Cyc 136. See, also, *Indiana Life, etc., Co.* v. *Reed* (1913), 54 Ind. App. 450, 459, 103 N. E. 77.

The only evidence on this branch of the case consists of certain letters from the appellant company to the insured, the material parts of which are as follows: On June 27, 1905, appellant wrote the insured as follows:

"Dear Sir: Re Federal Policy No. 8166 Union No. 1719. I am pleased to make report as follows on the condition of said policy at the time of its transfer to the Federal Life Insurance Company: 1. Amount of lien for reserve.........$  354.35

2. Amount of Lien for impairment...$ 2103.70
     Less pro rata credit on account of
     assets transferred from the Union
     Life to the Federal Life.........$     19.44

                    Net impairment .............$ 2084.26
3. Federal premium for similar policy.$     91.56
4. Union Life Premium...............$     58.50
The 'assessment clause' in your policy has been
eliminated, your policy has been placed upon a
legal reserve basis and item No. 1 represents the
reserve for the proper protection of this policy.
This amount not having been accumulated and
transferred by the Union Life to this Company
with the insurance is considered as having been
loaned to you at 5% interest payable annually
in advance. · This loan may be repaid at your
pleasure or allowed to stand until a settlement
be made under the policy, at which time it will
be deducted from the proceeds. If repaid it may
be reborrowed as a whole or in part at your
pleasure. * * * Item No. 2 is intended in
some measure to compensate the Company for
deterioration of vitality occasioned by the lapse
of time since you passed a medical examination.
This portion of the debt draws no interest and
may stand against the policy until a settlement
be made thereunder, being deducted at that time
or it will be reduced or removed if you pass a
medical examination satisfactory to our Med-
ical Department. On application a local exam-
iner will be designated before whom you may
appear for examination at our expense. If the
impairment lien be removed, said pro rata credit

will be applied to reduce the reserve lien. If the impairment lien be not removed, all further premium payments will be applied as made to reduce it. * * * I have written you thus fully because I desire you to know the exact facts regarding your policy. * * *"

Under date of July 12, 1905, appellant wrote the insured as follows:

"Your esteemed favor of recent date, relating to policy 8166, is at hand and carefully noted. In reply will say that this policy is carried on a semi-annual basis. The regular Federal premium for a policy such as yours issued at your original age of fifty-four is $91.56, payable semi-annually, the policy being for $3,000. This is the maximum premium which we reserve the right to collect on this policy. However, until further notice you have the privilege, if you desire, to continue your former Union premium of $58.50 semi-annually, in which case the difference between the smaller and the larger premium will be charged against your policy as a loan and draw 5% interest payable annually until paid in cash or until some other settlement is made under the policy. If all premiums be paid in full to the date of death, the amount to be deducted from the face of the policy at this time, would be approximately $2500. * * *"

Under the principles of law above announced, and in view of the express finding that after the receipt of the letters above referred to the insured applied for and was examined for the purpose of removing the so-called impairment lien and that said lien was

removed, can it be said that the evidence above set out warranted the inference that appellant "would not thereafter accept and receive from him (the insured) the premiums and annual dues thereafter under the terms of the original contract to become payable except on condition that he would consent and agree to the placing of said so-called reserve lien  *  *  *  upon his said policy?" While the evidence is far from being conclusive, we are of the opinion that such inference was warranted.

Other questions are raised, but in our discussion we have disposed of the controlling ones, and further disposition is unnecessary.

Finding no available error in the record, the judgment must be affirmed.   Judgment affirmed.

NOTE.—Reported in 118 N. E. 842.